696 So.2d 715 (1997)
STATE of Florida, Petitioner,
v.
Duane OWEN, Respondent.
No. 85781.
Supreme Court of Florida.
May 8, 1997.
Rehearing Denied July 7, 1997.
*716 Robert A. Butterworth, Attorney General and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, for Petitioner.
Carey Haughwout of Tierney & Haughwout, West Palm Beach, for Respondent.
James T. Miller of Corse, Bell & Miller, P.A., Co-Chairman, Jacksonville, and Robert A. Harper, Co-Chairman, Tallahassee, for Florida Association of Criminal Defense Lawyers, Amicus Curiae.
Andrew H. Kayton, Legal Director, Miami, Florida, for The American Civil Liberties Union Foundation of Florida, Inc., Amicus Curiae.
GRIMES, Justice.
We have for review a decision ruling upon the following question certified to be of great public importance:
DO THE PRINCIPLES ANNOUNCED BY THE UNITED STATES SUPREME COURT IN [DAVIS v. UNITED STATES, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) ] APPLY TO THE ADMISSIBILITY OF CONFESSIONS IN FLORIDA, IN LIGHT OF [TRAYLOR v. STATE, 596 So.2d 957 (Fla.1992)]?
State v. Owen, 654 So.2d 200, 202 (Fla. 4th DCA 1995). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
*717 Duane Owen was convicted of first-degree murder and sentenced to death for the 1984 stabbing death of a fourteen-year-old babysitter in Delray Beach.[1] The essence of the State's case against Owen consisted of inculpatory statements made by Owen while he was in police custody and under interrogation. On direct appeal, we reversed Owen's convictions and remanded for retrial, holding that although Owen's confession had been voluntary and free of improper coercion under the Fifth Amendment,[2] the statements nevertheless had been obtained in violation of Owen's rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Owen v. State, 560 So.2d 207, 209-11 (Fla.1990).[3]
Our decision in Owen turned on two responses that Owen had given to police questions about what we characterized as relatively insignificant details of the crime.[4] We determined those responses to be, "at the least, an equivocal invocation of the Miranda right to terminate questioning." Owen, 560 So.2d at 211. Based upon our interpretation of federal law at that time, we held that upon a suspect's equivocal invocation of the right to terminate questioning, police are required to stop all further questioning except that which is designed to clarify the suspect's wishes. Id. Rather than limiting their questions to clarify what Owen meant, the police continued to question him about the details of the murder. At that point, Owen began to give the inculpatory answers that led to his conviction. We ruled the statements inadmissible and reversed because we were unable to find that the error in admitting them was harmless beyond a reasonable doubt. Id.
Subsequent to our decision in Owen but before Owen's retrial, the United States Supreme Court announced in Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), that neither Miranda nor its progeny require police officers to stop interrogation when a suspect in custody, who has made a knowing and voluntary waiver of his or her Miranda rights, thereafter makes an equivocal or ambiguous request for counsel. Thus, under Davis police are under no obligation to clarify a suspect's equivocal or ambiguous request and may continue the interrogation until the suspect makes a clear assertion of the right to counsel.
Prior to retrial the State moved the trial court to reconsider the admissibility of Owen's confession in light of Davis, but the trial court held the confession inadmissible. The State next filed a petition for a writ of certiorari in the district court of appeal. The district court observed:
If we were certain that Davis was the law in Florida, and if this specific confession had not already been held inadmissible by the Florida Supreme Court, we would grant certiorari, because the pretrial refusal to admit this confession would be a departure from the essential requirements of law for which the state would have no adequate remedy by review.
Owen, 654 So.2d at 201. Because the suppression of Owen's confession was the law of the case, the court denied the petition but certified the foregoing question.
At the outset, we recognize that Davis involved an ambiguous request for counsel whereas Owen's case turns on his purported decision to terminate interrogation. However, the reasoning of Davis applies when a defendant makes an equivocal *718 assertion of any right under Miranda. This is well illustrated by the case of Coleman v. Singletary, 30 F.3d 1420 (11th Cir.1994), cert. denied, 514 U.S. 1086, 115 S.Ct. 1801, 131 L.Ed.2d 727 (1995), in which the court considered the question of whether the defendant's response to a police inquiry constituted an invocation of his right to remain silent. In upholding the admissibility of the confession because the defendant's response had been equivocal, the court reasoned:
Because we are bound to follow the Supreme Court's holding in Davis, our decisions creating a duty to clarify a suspect's intent upon an equivocal invocation of counsel are no longer good law. Furthermore, we have already recognized that the same rule should apply to a suspect's ambiguous or equivocal references to the right to cut off questioning as to the right to counsel. Martin v. Wainwright, 770 F.2d 918, 924 (11th Cir.1985) ("We see no reason to apply a different rule to equivocal invocations of the right to cut off questioning."), modified on other grounds, 781 F.2d 185 (11th Cir.), cert. denied, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986). The Supreme Court's concern in Davis was to craft "a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information." 512 U.S. at 453, 114 S.Ct. at 2352. The Court rejected a rule requiring that police cease questioning a suspect after an ambiguous or equivocal invocation of his Miranda rights out of a fear that the "clarity and ease of application" of the bright line rule "would be lost." Id. Because this concern applies with equal force to the invocation of the right to remain silent, and because we have previously held that the same rule should apply in both contexts, we hold that the Davis rule applies to invocations of the right to remain silent. A suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent. If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect's intent, and they may proceed with the interrogation.
Id. at 1424.[5] We agree that Davis applies as much to requests to terminate interrogation as it does to requests for counsel.[6]Davis now makes it clear that, contrary to our belief at the time, federal law did not require us to rule Owen's confession inadmissible.
Moreover, there is no question that our holdings in Owen and our prior cases on the same subject[7] were predicated upon our understanding of federal law that even an equivocal invocation of Miranda rights required *719 the police to either terminate the interrogation or clarify the suspect's wishes. In fact, before the United States Supreme Court's decisions in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), this Court had implied, if not held, that an ambiguous request for a lawyer would not require police to clarify the suspect's wishes. State v. Craig, 237 So.2d 737, 739-40 (Fla.1970) (concluding that interrogator was not required to convince defendant of need for counsel after defendant stated, "Well, I would like to have one [lawyer] in a way, but I don't see how it can help me" and finding defendant had validly waived right to counsel). Thus, Davis has undercut the premise upon which our decision in Owen was based.
Owen cites Traylor v. State, 596 So.2d 957 (Fla.1992) in support of the argument that article I, section 9 provides an independent basis for requiring police to clarify a suspect's equivocal request to terminate questioning. He relies specifically upon our statement in Traylor that "[u]nder Section 9, if the suspect indicates in any manner that he or she does not want to be interrogated, interrogation must not begin or, if it has already begun, must immediately stop." Id. at 966 (emphasis added). In so doing, he reads a meaning into these words that we never attributed to them.
In Traylor, we reaffirmed the federalist principles which give primacy to our state constitution and pointed out that the federal constitution represents the floor for basic freedoms while our constitution represents the ceiling. Id. at 962. Though our analysis in Traylor was grounded in the Florida Constitution, our conclusions were no different than those set forth in prior holdings of the United States Supreme Court. The words "indicates in any manner" added nothing to federal law, as they were identical to the words used in Miranda itself. Miranda, 384 U.S. at 473, 86 S.Ct. at 1627. Moreover, we did not construe these words in Traylor or discuss the appropriate police response to an equivocal request because the defendant in Traylor made no request whatsoever that he wished to invoke his Miranda rights. Traylor, 596 So.2d at 971. The words "in any manner" simply mean that there are no magic words that a suspect must use in order to invoke his or her rights.
Therefore, Traylor does not control our decision in this case. It does, however, remind us that we have the authority to reaffirm Owen regardless of federal law. Upon consideration, we choose not to do so. We find the reasoning of Davis persuasive:
Although the courts ensure compliance with the Miranda requirements through the exclusionary rule, it is police officers who must actually decide whether or not they can question a suspect. The Edwards rulequestioning must cease if the suspect asks for a lawyerprovides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he hasn't said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.
Davis, 512 U.S. at 461, 114 S.Ct. at 2356. This same principle applies to the exercise of the right to terminate interrogation. Coleman. To require the police to clarify whether an equivocal statement is an assertion of one's Miranda rights places too great an impediment upon society's interest in thwarting crime. As noted in Traylor: "We adhere to the principle that the state's authority to obtain freely given confessions is not an evil, but an unqualified good." 596 So.2d at 965. Thus, we hold that police in Florida need not ask clarifying questions if a defendant who has received proper Miranda warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her Miranda rights.
*720 Our decision today is in harmony with those of other states which have also held in the wake of Davis that police are no longer required to clarify equivocal requests for the rights accorded by Miranda. E.g., People v. Crittenden, 9 Cal.4th 83, 36 Cal.Rptr.2d 474, 499-500, 885 P.2d 887, 912-13 (1994), cert. denied, ___ U.S. ___, 116 S.Ct. 144, 133 L.Ed.2d 90 (1995); State v. Morris, 255 Kan. 964, 880 P.2d 1244, 1253 (1994); State v. Williams, 535 N.W.2d 277, 285 (Minn.1995); State v. Panetti, 891 S.W.2d 281, 284 (Tex.Ct. App.1994) (noting that Davis removed federal foundation for rule that ambiguous request for counsel bars further questioning except for clarifying the statement; irrespective of primacy doctrine, no reason to mandate rule as a matter of state law and create greater rights for criminal defendants); State v. Long, 190 Wis.2d 386, 526 N.W.2d 826, 830 (App.1994), review dismissed, 531 N.W.2d 330 (Wis.1995). But see State v. Hoey, 77 Hawai'i 17, 881 P.2d 504, 523 (1994).
Having determined that Florida's Constitution does not place greater restrictions on law enforcement than those mandated under federal law when a suspect makes an equivocal statement regarding the right to remain silent, we now face the question of how to treat Owen's confession. Generally, under the doctrine of the law of the case, "all questions of law which have been decided by the highest appellate court become the law of the case which must be followed in subsequent proceedings, both in the lower and appellate courts." Brunner Enters., Inc. v. Department of Revenue, 452 So.2d 550, 552 (Fla.1984). However, the doctrine is not an absolute mandate, but rather a self-imposed restraint that courts abide by to promote finality and efficiency in the judicial process and prevent relitigation of the same issue in a case. See Strazzulla v. Hendrick, 177 So.2d 1, 3 (Fla.1965) (explaining underlying policy). This Court has the power to reconsider and correct erroneous rulings in exceptional circumstances and where reliance on the previous decision would result in manifest injustice, notwithstanding that such rulings have become the law of the case. Preston v. State, 444 So.2d 939 (Fla.1984).
An intervening decision by a higher court is one of the exceptional situations that this Court will consider when entertaining a request to modify the law of the case. Brunner, 452 So.2d at 552; Strazzulla, 177 So.2d at 4. Thus, the Supreme Court's decision in Davis qualifies as an exceptional situation. Moreover, we find that reliance upon our prior decision in Owen's direct appeal would result in manifest injustice to the people of this state because it would perpetuate a rule which we have now determined to be an undue restriction of legitimate law enforcement activity.
Because Owen's responses were equivocal,[8] the State would have this Court reinstate Owen's convictions on the ground that a retrial is unnecessary in light of our decision. We are unwilling to go that far. Our prior decision which reversed Owen's convictions and remanded for a new trial is a final decision that is no longer subject to rehearing. With respect to this issue, Owen stands in the same position as any other defendant who has been charged with murder but who has not yet been tried. Just as it would be in the case of any other defendant, the admissibility of Owen's confession in his new trial will be subject to the Davis rationale that we adopt in this opinion. However, Owen's prior convictions cannot be retroactively reinstated.
We answer the certified question in the affirmative. We quash the decision below and remand with directions to grant the petition for certiorari. We recede from Owen, Long, Valle, Waterhouse, and Cannady to the extent that they are inconsistent with this opinion.
It is so ordered.
OVERTON, HARDING and WELLS, JJ., concur.
SHAW, J., concurs specially with an opinion.
*721 KOGAN, C.J., dissents with an opinion.
ANSTEAD, J., recused.
SHAW, Justice, concurring specially.
The majority opinion endorses the rationale of Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), and holds that under Florida law once a suspect initially waives his or her rights under Miranda the suspect must thereafter "clearly" invoke the right to cut off questioning:
Thus, we hold that police in Florida need not ask clarifying questions if a defendant who has received proper Miranda warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her Miranda rights.
Majority op. at 719. Neither Davis nor the majority opinion, however, explains what "clearly" means.
I concur in the majority opinion, as far as it goes, but write specially to express my view as to what constitutes a "clear" invocation of the right to cut off questioning in Florida.
This Court explained in Traylor v. State, 596 So.2d 957 (Fla.1992), that although the federal constitution secures a common degree of protection for the citizens of all fifty states, the United States Supreme Court has been parsimonious in construing the extent of this protection for good reason:
[F]ederal precedent applies equally throughout fifty diverse and independent states; a ruling that may be suitable in one may be inappropriate in others. And [also], the federal union embraces a multitude of localities; the Court oftentimes is simply unfamiliar with local problems, conditions and traditions.
Id. at 961.
State high courts, on the other hand, do not suffer these concerns and may construe their state constitutions freely to address local conditions:
[N]o court is more sensitive or responsive to the needs of the diverse localities within a state, or the state as a whole, than that state's own high court. In any given state, the federal Constitution thus represents the floor for basic freedoms; the state constitution, the ceiling.
Id. at 962. This division of labor between the United States Supreme Court and the state high courts is the essence of our federalist system.
In Florida, a prime reason for requiring that officers inform a citizen of his or her right to remain silent and cut off questioning under article I, section 9, Florida Constitution, is "to ensure the voluntariness of confessions." Id. at 965-66. This purpose is substantially achieved when a suspect is initially advised of this right and given the opportunity to remain silentthe reading of the right alone goes far in dispelling the inherently coercive atmosphere of custodial interrogation. The present issue, I emphasize, does not concern or compromise in any way this initial right.
For those suspects who feel comfortable enough to waive their rights and proceed with questioning, it is not unreasonable to require that they thereafter express any desire to cut off the interview clearly. It would substantially impede the interview process, would do virtually nothing to advance the policy underlying the pre-interrogation warnings, and would in fact undermine the legitimacy of those warnings to require that each interview grind to a halt whenever an otherwise willing interviewee uses any language that might hint at a desire to stop. I agree with the majority that the "clearly invoke" standard articulated in Davis is appropriate for Florida, but I would explain what "clearly" means for the benefit of Florida's courts.
To comport with federalist principles, the Florida standard must take into account this state's unique geographic and demographic makeup. Florida is located near the heart of the Caribbean regionin close proximity to the various Caribbean islands, and both Central and South Americaand our state population reflects this. Florida is home to large numbers of immigrants from Cuba, Haiti, Panama, Guatemala, Brazil, Argentina, Chile, and many other countries. Additionally, Florida's climate and soil render it ideal for seasonal farming, and migrant workers often are present in substantial numbers. Given *722 this rich diversity, it is unrealistic to expect each Floridian to invoke his or her constitutional rights with equal precision. Such an expectation might make sense in a homogeneous region of the country like the Midwest but is untenable here. Many Floridians have little formal schooling, speak brokenor noEnglish, or have emigrated from societies where the rules governing citizen/police encounters are vastly different from ours.
Accordingly, to ensure compliance with the Florida Constitution, and as required in other Miranda contexts, courts should use a "reasonable person" standard when determining whether a suspect "clearly" invoked his or her right to cut off questioning. Cf. Traylor, 596 So.2d at 966 nn. 16-17 (a person is in "custody" if "a reasonable person placed in the same position" would think so; "interrogation" takes place when "a reasonable person" would think so). Accord Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In my view, a suspect "clearly" invokes the right to cut off questioning when a reasonable person would conclude that the suspect has evinced a desire to stop the interview. All the circumstances surrounding the statementincluding the suspect's schooling, command of English, and ethnic backgroundshould be considered.
A final caution from Davis: "Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." Davis, 512 U.S. at 461, 114 S.Ct. at 2356.
In the present case, this Court already has determined that "[Owen's] responses were, at the least, an equivocal invocation of the Miranda right to terminate questioning." Owen v. State, 560 So.2d 207, 211 (Fla.1990) (emphasis added). To my mind, this means that on the spectrum ranging from "no" invocation to "equivocal" invocation to "clear" invocation the comments fall on or between "equivocal" and "clear." I agree that under these circumstances this case must be remanded for reconsideration under the Davis standard.
In sum, I agree that the "clearly invoke" standard is appropriate for use in Florida but feel that without further elucidation this standard is in danger of being used as a "one glove fits all" criterion. Use of the term "clearly" in such a fashion would disserve Florida's courts, for to require a migrant worker with a limited education and strong regional dialect to "clearly" invoke his or her constitutional rights with the same precision and forcefulness as a urologist or a nationally-recognized trial lawyer is simply unrealistic.
I concur in the majority opinion as explained herein.
KOGAN, Chief Justice, dissenting.
I disagree with the majority's holding that "police in Florida need not ask clarifying questions if a defendant who has received proper Miranda warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her Miranda rights." Majority op. at 719. The majority's decision is consistent with the United States Supreme Court's five-to-four decision in Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), which adopts what is commonly referred to as the "threshold standard of clarity" approach.[9] In following Davis, however, the majority rejects the "clarification" approach *723 which the majority of courts, including this Court in Owen v. State, 560 So.2d 207 (Fla.), cert. denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990), applied prior to the Davis decision. See also State v. Leyva, 906 P.2d 894, 897-98 (Utah.Ct.App. 1995), cert. granted, 916 P.2d 909 (Utah 1996), and cases cited therein.
I find, in accord with Justice Souter's concurring opinion in Davis,[10] that the "clarification" approach offers a better means of dealing with equivocal or ambiguous requests to terminate interrogation. Consistent with Justice Souter, I would hold that when a suspect makes an equivocal or ambiguous invocation of his or her Miranda rights,[11] all questioning must cease except for those questions designed to clarify the suspect's equivocal statements. Moreover, I believe that pursuant to article I, section 9 of the Florida Constitution, we are not bound by the decision in Davis but are free to give the broader protection offered by the "clarification" approach.
In my opinion, the "clarification" approach offers the best balance between effective law enforcement and the rights of the accused. With regard to ensuring effective law enforcement, this approach provides law enforcement officers with workable guidelines. While the majority finds, in accord with Davis, that the "threshold standard of clarity" approach provides law enforcement officers with a bright line rule that can be easily applied in the real world, I find the "clarification" approach actually provides more workable guidelines for officers.
The "threshold standard of clarity" approach requires the interrogating officer to make a determination as to whether a suspect has "clearly" invoked his or her Miranda rights. As Justice Shaw's concurring opinion confirms, this is not an easy task in light of this state's unique demographic and geographic makeup. Other factors such as a suspect's physical condition, level of intimidation, level of fear, or lack of linguistic ability also make the task of identifying a clear invocation of Miranda rights a difficult one. Ultimately, the "threshold standard of clarity" approach requires individual officers to make a judgement as to whether a suspect has unequivocally invoked his or her Miranda rights.
Rather than requiring the officer to guess whether a suspect has invoked his or her Miranda rights, the "clarification" approach puts this judgment call into the hands of the party that is most competent to make itthe individual suspect. See Davis, 512 U.S. at 473-75, 114 S.Ct. at 2363 (Souter, J., concurring in the judgment). The officer need only decide if the suspect's statements are susceptible to being interpreted as an invocation of the suspect's Miranda rights and thereafter ask questions to clarify the suspect's intent. Additionally, if we continue to use the "clarification" approach in cases like the instant one, officers could employ the same, rather than different approaches to a suspect's initial equivocal invocation of his or her Miranda rights and an equivocal invocation that follows a waiver of those rights.[12] Moreover, applying a single approach is consistent with Miranda`s promise of a "continuous" opportunity to exercise one's Miranda rights. See Davis, 512 U.S. at 469-71, 114 S.Ct. at 2361 (Souter, J., concurring in the judgment).
In addition to providing the necessary guidance to law enforcement officers, I find that the "clarification" approach has adequately served and will continue to serve society's interest in thwarting crime. In response to the majority's contention to the contrary I quote from Justice Souter's concurring opinion in Davis:
[T]he margin of difference between the clarification approach advocated here and *724 the one the Court adopts is defined by the class of cases in which a suspect, if asked, would make it plain that he meant to request counsel (at which point questioning would cease). While these lost confessions do extract a real price from society, it is one that Miranda itself determined should be borne.
Davis, 512 U.S. at 474, 114 S.Ct. at 2363 (Souter, J., concurring in the judgment). According to Souter, the "clarification" approach merely prevents the use of confessions that a suspect did not intend to give and therefore does not act as a hindrance to legitimate police investigation.
On the opposite side of the scale created by equivocal invocations of Miranda rights lie the rights of the accused. In my opinion, the "threshold standard of clarity" approach does not adequately account for these rights and consequently tips the scale in favor of law enforcement interests. The majority in Davis recognized that situations may arise in which a suspect may not articulate his or her desire to remain silent or to have an attorney present because of fear, intimidation, lack of linguistic skill, language barriers, or a variety of other reasons. 512 U.S. at 460, 114 S.Ct. at 2355-56. The Court, however, found that confessions obtained under such circumstances were an acceptable risk in light of the protections already afforded these suspects by the Miranda warnings. Davis, 512 U.S. at 460, 114 S.Ct. at 2355-56.
I find fault with the Davis majority's analysis for two reasons. First, I believe that the Davis majority downplays the significance of this problem. As Justice Souter in his concurring opinion points out:
[C]riminal suspects who may (in Miranda `s words) be "thrust into an unfamiliar atmosphere and run through menacing police interrogation procedures" would seem an odd group to single out for the Court's demand of heightened linguistic care. A substantial percentage of them lack anything like a confident command of the English language, many are "woefully ignorant," and many more will be sufficiently intimidated by the interrogation process or overwhelmed by the uncertainty of their predicament that the ability to speak assertively will abandon them.
Davis, 512 U.S. at 469-70, 114 S.Ct. at 2360-61 (Souter, J., concurring in the judgment) (citations omitted). Justice Souter continues:
Social science confirms what common sense would suggest, that individuals who feel intimidated or powerless are more likely to speak in equivocal or nonstandard terms when no ambiguity or equivocation is meant. Suspects in police interrogation are strong candidates for these effects.
Id. at 470 n. 4, 114 S.Ct. at 2361 n. 4 (Souter, J. concurring in the judgment) (citations omitted). Thus, Davis and the majority in the instant case place a hurdle in front of those individuals who are the most likely to have difficulty surmounting that hurdle and successfully invoking their rights. The "clarification" approach, on the other hand, removes that hurdle and through the use of clarifying questions ensures compliance with a suspect's actual desires.
Rather than apply the "clarification" approach, however, the Davis majority holds that the disadvantages a suspect suffers under the "threshold standard of clarity" approach are adequately addressed by the reading of one's Miranda rights. Again, I must disagree. As Justice Souter points out, Miranda warnings alone will not suffice to protect a suspect's Fifth Amendment rights in every situation.
When a suspect understands his (expressed) wishes to have been ignored (and by hypothesis, he has said something that an objective listener could "reasonably" although not necessarily, take to be a request), in contravention of the "rights" just read to him by his interrogator, he may well see further objection as futile and confession (true or not) as the only way to end his interrogation.
Davis, 512 U.S. at 472-73, 114 S.Ct. at 2362 (Souter, J., concurring in the judgment). Only the "clarification" approach will adequately protect the rights of all suspects, including the suspect described by Justice Souter, while at the same time serve society's interest in maintaining an effective system of law enforcement.
*725 The majority concedes, and I agree, that our Constitution gives us the authority to reaffirm Owen, and thereby continue applying the "clarification" approach, regardless of federal law. Majority op. at 719. See also State v. Hoey, 77 Hawai'i 17, 881 P.2d 504 (1994). The majority, however, declines do so in part because it finds that our prior application of the "clarification" approach was based on our understanding that federal law required a police officer to terminate interrogation or clarify a suspect's wishes when a suspect equivocally invoked his or her Miranda rights. In support of its finding, the majority states:
In fact, before the United States Supreme Court's decisions in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), this Court had implied, if not held, that an ambiguous request for a lawyer would not require police to clarify the suspect's wishes. State v. Craig, 237 So.2d 737 (Fla. 1970) (concluding that interrogator was not required to convince defendant of need for counsel after defendant stated, "Well, I would like to have one [lawyer] in a way, but I don't see how it can help me" and finding defendant had validly waived right to counsel).
Majority op. at 719. Mosley and Edwards, however, do not address ambiguous requests for a lawyer. As Justice Souter points out in his concurring opinion in Davis, the United States Supreme Court declined to directly address this issue prior to Davis. 512 U.S. at 467 n. 3, 114 S.Ct. at 2359 n. 3. Consequently, any change that might have occurred in the Florida law on this issue subsequent to Craig was not solely the result of decisions from the United States Supreme Court. It is my belief that article I, section 9 of our state constitution played a significant part in resolving this issue.
Because I find that the "clarification" approach provides the best balance between the rights of the accused and society's interest in effective law enforcement, and because I find that article I, section 9 of Florida's Constitution provides a basis for the continued use of the "clarification" approach, I would answer the certified question in the negative. I note however that Traylor does not expressly require this result. As the majority indicates, however, Traylor does remind us that we have the authority to reaffirm Owen regardless of federal law. Majority op. at 719. I would exercise that authority and approve the district court's decision denying certiorari.
NOTES
[1] Owen also was convicted of burglary and sexual battery.
[2] Videotapes of the interrogations revealed that Owen had initiated the sessions, was repeatedly advised of his rights to counsel and to remain silent, and acknowledged that he was familiar with his Miranda rights and knew them as well as the police officers. None of the six questioning sessions was individually lengthy, and Owen was given food, refreshments, and breaks during the sessions. Owen v. State, 560 So.2d 207, 210 (Fla.1990).
[3] The facts of the murder are set forth more fully in Owen, 560 So.2d at 209 (Fla.1990).
[4] At one point, one of the officers asked whether Owen had targeted the house or whether he had just been going through the neighborhood. Owen responded, "I'd rather not talk about it." Then later the officer asked Owen about where he had put a bicycle, to which Owen responded, "I don't want to talk about it."
[5] Recently, the Eleventh Circuit Court of Appeals has held "that a suspect's refusal to answer certain questions is not tantamount to the invocation, either equivocal or unequivocal, of the constitutional right to remain silent and that questioning may continue until the suspect articulates in some manner that he wishes the questioning to cease." United States v. Mikell, 102 F.3d 470, 477 (11th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1459, 137 L.Ed.2d 563 (1997). This holding is precisely applicable to the instant case because the basis upon which Owen's statements were previously suppressed was because he had refused to answer two questions.
[6] If anything, requests for counsel have been accorded greater judicial deference than requests to terminate interrogation. As the Minnesota Supreme Court explained in State v. Williams, 535 N.W.2d 277, 285 (Minn.1995):

Because the Supreme Court has held that the Constitution does not require police officers to confine their questioning to clarifying questions when an accused ambiguously or equivocally attempts to invoke his right to counsel, Davis v. United States, 512 U.S. 452, 460-62, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994), it follows by even greater logic that the Constitution does not require such a clarifying approach when an accused ambiguously or equivocally attempts to invoke his [or her] right to remain silent. See Michigan v. Mosley, 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 326 n. 10, 46 L.Ed.2d 313 (1975) (distinguishing between the procedural safeguards triggered by a request to remain silent and the greater procedural safeguards triggered by a request for an attorney).
[7] See, e.g., Long v. State, 517 So.2d 664, 667 (Fla.1987); Valle v. State, 474 So.2d 796, 799 (Fla.1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986); Waterhouse v. State, 429 So.2d 301, 305 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983); Cannady v. State, 427 So.2d 723, 728-29 (Fla.1983).
[8] We reject Owen's argument that because we termed his comments to be "at least equivocal" in our earlier opinion we should now construe his comments as unequivocal.
[9] The "threshold standard of clarity" approach is one of three approaches that federal courts, prior to Davis, and state courts have applied to a suspect's ambiguous or equivocal invocation of Miranda rights. See, e.g., Smith v. Illinois, 469 U.S. 91, 95-96 & n. 3, 105 S.Ct. 490, 492-93 & n. 3, 83 L.Ed.2d 488 (1984); State v. Leyva, 906 P.2d 894, 897-98 (Utah.Ct.App.1995), cert. granted, 916 P.2d 909 (Utah 1996); State v. Hoey, 77 Hawai'i 17, 881 P.2d 504, 521-22 (1994). The second approach, which I refer to here as the "clarification" approach, requires that interrogation cease upon an equivocal invocation of a Miranda right, but allows the interrogator to ask the suspect narrow questions designed to clarify the suspect's equivocal statement. See, e.g., Smith, 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3; Leyva, 906 P.2d at 897-98; Hoey, 881 P.2d at 522. The third approach requires that all questioning cease when the suspect equivocally refers to his or her Miranda rights. See, e.g., Smith, 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3; Leyva, 906 P.2d at 897; Hoey, 881 P.2d at 521.
[10] Justices Blackmun, Stevens, and Ginsberg joined in Justice Souter's opinion concurring in the judgment.
[11] The phrase "Miranda rights" as used here refers to both the right to counsel and the right to cut off questioning.
[12] In Davis, the defendant's equivocal reference to his Miranda rights followed a waiver of those rights. Davis, 512 U.S. at 455, 114 S.Ct. at 2353. The Court's reasoning does not alter the procedures officers must follow when a suspect makes an equivocal invocation of his or her Miranda rights without first validly waiving them. In this later situation, the "clarification" approach may still be used.