801 So.2d 318 (2001)
Charles FORD, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-0969.
District Court of Appeal of Florida, First District.
December 19, 2001.
*319 Nancy A. Daniels, Public Defender; Glenna Joyce Reeves, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Douglas T. Squire, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
Charles Ford appeals his convictions for first degree murder and robbery with a firearm. He contends that the trial court erred both in admitting his confession and in allowing a witness to testify about threats he made so she would not testify against him. We affirm.

I.
Mr. Ford filed a timely motion to suppress alleging that his confession was obtained in violation of his privilege against self-incrimination and the dictates of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At the suppression hearing, the interrogating officer testified that, after having originally waived all rights, Mr. Ford said "Just take me to jail" on at least three occasions, before he eventually confessed. The trial court denied the suppression motion. On appeal, Mr. Ford contends that his repeatedly saying "Just take me to jail" ought to be deemed an unambiguous invocation of the right to remain silent, "an exercise of the right [which should have been] scrupulously honored." See Miranda, 384 U.S. at 479, 86 S.Ct. 1602.
But the Florida Supreme Court held in State v. Owen, 696 So.2d 715, 717 & n. 4 (Fla.1997), that the statements "I'd rather not talk about it" and "I don't want to talk about it" were merely "equivocal" and ambiguous invocations of the right to remain silent, which required neither that the interrogator cease questioning nor that any ambiguity be resolved. See also Owen v. State, 560 So.2d 207, 210-11 (Fla.1990). We do not, in short, write on a blank slate. Despite the context in which he spoke,[1] the *320 language Mr. Ford used here was more, not less, "equivocal" than the statements made in Owen. Under controlling authority, therefore, the interrogating officer was under no obligation to cease questioning or to inquire in order to clarify whether the prisoner wanted interrogation to cease. See Owen, 696 So.2d at 717-18 (relying on Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), and Coleman v. Singletary, 30 F.3d 1420 (11th Cir.1994)); see also State v. Glatzmayer, 789 So.2d 297, 302-03 (Fla.2001); Almeida v. State, 737 So.2d 520, 523-24 (Fla.1999). The trial court did not err in denying the motion to suppress.

II.
The state introduced evidence of threats Mr. Ford allegedly addressed to a coconspirator to discourage her from testifying against him. The witness in question testified that Mr. Ford first told her he would "get" anyone who told on him and later told her he would get her for speaking to the authorities. Here as below, the defense contends that evidence of the threats was inadmissible because, at the time the threats were made, Mr. Ford was also charged with another, unrelated offense (dealing in stolen property) and the threats could have pertained to the other, unrelated offense rather than to the more recent murder and robbery.
Threats made to discourage a witness from testifying are relevant to show consciousness of guilt. "Evidence of threats made by a defendant ... is relevant... since it indicates a desire to evade prosecution and is evidence of consciousness of guilt." Coronado v. State, 654 So.2d 1267, 1269 (Fla. 2d DCA 1995); see Baker v. State, 760 So.2d 1085, 1091 (Fla. 5th DCA 2000); Quarrells v. State, 641 So.2d 490, 491 (Fla. 5th DCA 1994); Knotts v. State, 533 So.2d 826, 827 (Fla. 1st DCA 1988).
Like flight, such threats must have a nexus with the crime charged in order to be relevant. See Bundy v. State, 471 So.2d 9, 20-21 (Fla.1985). Where relevance is disputed, the state must adduce evidence that a reason for flight was to avoid being held accountable for the crime at issue. See Thomas v. State, 748 So.2d 970, 982 (Fla.1999); Escobar v. State, 699 So.2d 988, 995 (Fla.1997) (holding that "there must be evidence which indicates a nexus between the flight ... and the crime(s) for which the defendant is being tried in that specific case").
Similarly, in order for evidence of a threat against a witness to be relevant, the threat must pertain to the witness's testifying about the crime or crimes for which the accused is standing trial. See Nichols v. State, 760 So.2d 223, 225-26 (Fla. 5th DCA 2000). The state must be prepared to put on evidence that the defendant intended that the threat influence the witness's testimony about a crime at issue in the trial. See Manuel v. State, 524 So.2d 734, 735 (Fla. 1st DCA 1988). Without some link to the charges being tried, a general threat is not admissible to show consciousness of guilt. Cf. Keller v. State, 586 So.2d 1258, 1260-61 (Fla. 5th DCA 1991) (holding that a request from the defendant that a person "back him" and go to court for him was simply too speculative to infer consciousness of guilt); see also Duke v. State, 106 Fla. 205, 142 So. 886, 887 (1932) (holding irrelevant the defendant's father's efforts to prevent a witness's testifying before the grand jury "unless some connection by defendant with such conduct of the father is shown, other than defendant's bare kinship to his father").
*321 The state presented ample evidence to prove a nexus here. The evidence showed that Mr. Ford had been charged with the murder and the robbery before he made the threats, and that he was aware that the witness had implicated him in both crimes. That she had also implicated him in dealing in stolen property did not render evidence of the threats inadmissible in the murder and robbery trial. See generally Randall v. State, 760 So.2d 892, 900 (Fla.2000) (holding that evidence of flight was relevant on consciousness of guilt as to both the offenses charged and as to an earlier probation violation); Freeman v. State, 547 So.2d 125, 128 (Fla.1989) (holding that evidence of flight was relevant on consciousness of guilt both as to the murder charged and as to an earlier murder); State v. Kelly, 256 Conn. 23, 770 A.2d 908, 934 (2001) ("[R]equiring the state to prove which crime caused a defendant to flee `would place upon the State an impossible burden to prove that one charged with multiple violations of the law fled solely because of his consciousness that he committed one particular crime. It is better logic to infer that the defendant, who is charged with several offenses, fled because of a conscious knowledge that he is guilty of them all.' (Emphasis added.) Fulford v. State, 221 Ga. 257, 258, 144 S.E.2d 370 (1965)."); Wright v. State, 312 Md. 648, 541 A.2d 988, 992 (1988) (holding that "an inference may arise of a consciousness of guilt where a suspected criminal uses a false name to conceal his true identity and this is so as to all crimes which that individual is suspected of having committed").
While it may strike some as improbable that Mr. Ford would threaten a witness to discourage her from testifying about dealing in stolen property, caring not that her testimony might send him to the electric chair for murder, our decision does not rest on any such improbability. We hold simply that the trial court did not abuse its discretion in allowing evidence of the threats in as tending to prove consciousness of guilt of the charged offenses, because the state adduced evidence that provided sufficient nexus between the threats and all three crimes.
Affirmed.
ALLEN, C.J., and BOOTH, J., CONCUR.
NOTES
[1] The relevant portions of the officer's testimony were the following:

Q ... [D]id you ask him ... if he ever heard of lethal injection?
A Yes, sir, I did.
Q And what did he reply?
A He replied he had.
Q ... Didn't he say they could fry me, I don't care, just take me to jail?
A Yes, sir.
Q Okay. After that, after you asked him that, if he'd rather die than go to jail, he said he does care about that and just to take him to jail, right?
A Yes, sir.
Q And then you asked him if he believed in God after that?
A Yes, sir.
Q And he said he did and then he replied just take me to jail?
A Yes, sir.
. . . .
Q And he says that a couple of times, doesn't he, just take me to jail, prior to this written statement?
A Yes, sir.
Q Didn't you consider that an indication at that point or desire on his part to terminate the interview?
A No, sir.