POLSTON, C.J.,
dissenting..
Because I believe that Deviney did not unequivocally invoke his right to remain silent before confessing to the murder of Delores Futrell, I respectfully dissent See State v. Owen, 696 So.2d 715, 718 (Fla.1997) (quoting Coleman v. Singletary, 30 F.3d 1420, 1424 (11th Cir.1994)) (“A suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent. If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect’s intent, and they may proceed with the interrogation.”).
Deviney voluntarily accompanied police to the station, where he was Mirandized. He then waived his rights and spoke with the police for over an hour, even voluntarily providing a DNA sample. After the police stated that they believed that he committed the murder, Deviney stated, “you all I’m ready to go.” But then he immediately said, “I don’t see how you all think I did that.” As the majority acknowledges,[7] the questioning properly con *82 tinued at this point with Deviney subsequently stating, “I’m done. I’m done.” However, when asked, “What does that mean, I’m done?,” he responded, “I’m done. I’m ready to go home and I did not do this and if I did do it, I want you all to show me that I did do it.”
Deviney’s statements do not constitute an unequivocal, unambiguous assertion of the right to remain silent. By immediately following his “I’m done” statements with a request that the police “show” him that he committed the murder, Deviney indicated a desire to continue his conversation with the police and discuss the evidence against him. As a result, a reasonable police officer would not have understood his ambiguous statements to be a clear assertion of the right to remain silent. See State v. Pitts, 936 So.2d 1111 (Fla. 2d DCA 2006) (holding that the context preceding the defendant’s initial response of “[n]o sir” when asked if he was willing to speak to the officer made the statement equivocal); see also Owen, 696 So.2d 715 (holding that the statements, “I’d rather not talk about it” and “I don’t want to talk about it,” were equivocal because, as explained in Almeida v. State, 737 So.2d 520 (Fla.1999), the police could have interpreted the statements to be a reference to particular questions); Ford v. State, 801 So.2d 318 (Fla. 1st DCA 2001) (affirming the denial of a motion to suppress where the defendant said, “Just take me to jail,” at least three times before confessing); Denny v. State, 617 So.2d 323 (Fla. 4th DCA 1993) (holding that the statement, “that’s it,” was equivocal where it could have been interpreted as either the completion of the defendant’s story or an invocation); Black’s Law Dictionary 581 (9th ed. 2009) (defining an “equivocal” statement as one that is capable of “[hjaving more than one meaning or sense” or is “ambiguous”). Therefore, the police did not violate Deviney’s right against self-incrimination by continuing questioning.
The questioning continued with the police telling Deviney that he had made “one mistake that night” and Deviney asking, “And what was that?” The police explained that the victim had his “DNA on her fingertips” and that Deviney cared about the victim. Thereafter, Deviney stated, “I’m done. I’m ready to go home. Can I leave?” The police responded by informing Deviney that he was no longer free to leave because , he was now being legally detained for murder. The police frisked Deviney, and Deviney attempted to leave the interview room. The police stood in his way and, without physically restraining him, convinced Deviney to sit back down.
Based upon the totality of the circumstances, it is clear that the focus of Devi-ney’s statements and actions at this point was his desire to leave the interview room and go home. The United States Supreme Court has held that one must consider the totality of the circumstances when determining whether a reasonable officer would understand a defendant’s statements to be a clear assertion of the right to remain silent. See Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (first emphasis added) (“[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.” (footnote omitted)); see also *83 Owen, 696 So.2d at 718 (“Davis applies as much to requests to terminate interrogation as it does to requests for counsel.”). Further, the Eleventh Circuit has explained that, when considering the circumstances, it is appropriate to distinguish between whether a defendant wishes to invoke his right to remain silent or whether the defendant wishes to go home. Specifically, in Delap v. Dugger, 890 F.2d 285, 293 (11th Cir.1989), the Eleventh Circuit held that the defendant’s statements and multiple attempts to leave were not even an equivocal invocation of the right to remain silent because “the context in the instant case was not whether or not Delap wished to terminate or delay questioning, but rather whether or not Delap felt like he was free to go home.” See also Moore v. Dugger, 856 F.2d 129, 134 (11th Cir.1988) (explaining that “the prospect of going home would naturally be of great interest to any suspect undergoing interrogation” and holding that the statement, “When will you all let me go home?,” did not evidence “a refusal to talk further”).
Here, Deviney did not make a clear statement indicating that he wished to remain silent. Instead, a reasonable officer under these circumstances could interpret Deviney’s conduct as a fundamental lack of understanding that he was no longer free to voluntarily leave the interview room because he was now under lawful arrest. Or perhaps Deviney was attempting to flee lawful custody. Either way, Deviney did not unequivocally invoke his right to remain silent. See also State v. Williams, 535 N.W.2d 277 (Minn.1995) (holding that a sixteen-year-old defendant did not unequivocally invoke his right to remain to silent when, after approximately one hour of interrogation, he stated, “I don’t have to take any more of your b[s],” and walked out of the interrogation room). Therefore, the police did not violate Deviney’s right to remain silent by continuing to question Deviney, and Deviney eventually confessed to both the police and his mother.
Given that Deviney did not “articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent,”[8] I would affirm the trial court’s denial of the motion to suppress his confessions. I would also affirm Deviney’s conviction and death sentence: Accordingly, I respectfully dissent.
CANADY, J., concurs.

. See majority op. at 77 (”[B]y continuing to engage the police, Deviney’s initial invocation of his right to remain silent was equivocal, as a reasonable officer could believe that, under *82 the circumstances, Deviney wanted to further engage the police and not end his interrogation.”)

. Owen, 696 So.2d at 718 (quoting Coleman, 30 F.3d at 1424).