FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2023-0919
_____

STATE OF FLORIDA,

　　Appellant,

　　v.

CARL J. DENSON,

　　Appellee.

_____

On appeal from the Circuit Court for Leon County.
Stephen Sebastian Everett, Judge.

June 12, 2024

PER CURIAM.

　　During a police interview, Appellee Carl Denson confessed to murder. But earlier in the interrogation (after having already waived his *Miranda*[*] rights), Mr. Denson softly uttered the phrase, "I just don't want to say nothing" in between other statements. On that basis, Mr. Denson argued that he had invoked his right to remain silent and moved to suppress the confession. The trial court agreed and suppressed the incriminating statement. On appeal, the State argues that Mr. Denson's alleged invocation was equivocal, so the trial court erred by suppressing the confession. We agree with the State and reverse.

_____

[*]*Miranda v. Arizona*, 384 U.S. 436 (1966).

## I.

The police brought Mr. Denson into the station to question him about a recent homicide. The interviewing officer read Mr. Denson his *Miranda* warnings. Mr. Denson voluntarily waived his rights and talked. The officer informed Mr. Denson about video and witness evidence that showed Mr. Denson was the shooter. Mr. Denson actively participated in the interview.

About fifteen minutes in, Mr. Denson turned to the side and softly stated, "Listen man, 'cause it don't matter, shit, 'cause I feel like I'm being tricked into it. I just don't want to say nothing, you feel me?" The officer responded, "I gotcha." Mr. Denson immediately continued, "That's why I know, I know y'all never gonna let me go, you feel me? I'm stuck with all this." The officer responded, "Yeah, but it's the difference between being stuck with premed versus what really happened. And that's all I want to know, what really happened, alright?" Mr. Denson continued to talk.

After about another half an hour, Mr. Denson broke a moment of silence declaring, "You know, fuck it, man. It is what it is. Yeah, I shot the man in the back of his head." When asked why, Mr. Denson answered, "Because, man, dude, dude took numerous things from me, dog . . . ."

Mr. Denson moved to suppress the incriminating statement. In his motion, Mr. Denson argued that he had unequivocally invoked his right to remain silent when he stated that he did not "want to say nothing." Therefore, he argued, the law required police to stop the interview at that point, and the subsequent incriminating statement was inadmissible. The State argued that, under the applicable case law and the statement's context, Mr. Denson did not unequivocally invoke his right to remain silent. The trial court ruled in Mr. Denson's favor. The State appeals.

## II.

On a suppression ruling, we review the court's factual findings for competent, substantial evidence and the legal application de novo. *Cuervo v. State*, 967 So. 2d 155, 160 (Fla. 2007); *Thomas v.*

2

*State*, 351 So. 3d 197, 204 (Fla. 1st DCA 2022). Because this Court has equal access to video evidence, such as the police interview here, we review it under a less deferential standard. *Thomas*, 351 So. 3d at 204.

Criminal defendants have the right against compelled self-incrimination. U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"); Art. I, § 9, Fla. Const. ("No person shall . . . be compelled in any criminal matter to be a witness against oneself."). In support of this right, during a custodial interrogation, the suspect must be informed of his *Miranda* warnings, such as the right to remain silent and the right to an attorney. *Miranda v. Arizona*, 384 U.S. 436, 469 (1966). The police may only continue questioning if the suspect voluntarily, knowingly, and intelligently waives his *Miranda* rights. *Id.* at 444.

The federal Constitution requires police to stop a custodial interrogation after the suspect has already waived his *Miranda* rights if the defendant invokes his right to an *attorney* during the interrogation. *Davis v. United States*, 512 U.S. 452, 461 (1994). Florida takes the rule one step further and requires the police to stop a custodial interrogation if the suspect unequivocally invokes *any Miranda* rights during the interrogation. *State v. Owen*, 696 So. 2d 715, 717–18 (Fla. 1997). But the police need not stop the interview or ask any clarifying questions "if a defendant who has received proper *Miranda* warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her *Miranda* rights." *Id.* at 719.

### III.

The question is whether Mr. Denson *unequivocally* invoked his right to remain silent. We conclude that he did not.

"A suspect unequivocally invokes the right to remain silent if, with sufficient clarity, he or she expresses a desire to end questioning in such a manner that a reasonable officer under the circumstances would understand that the suspect has invoked his or her right to end questioning." *Deviney v. State*, 112 So. 3d 57, 74 (Fla. 2013). "Further, such an invocation may include not only the

words of a defendant, but also his or her *conduct*." *Id.* (emphasis in original). "Police fail to scrupulously honor a defendant's invocation of the right to remain silent, and therefore violate that right, when, in the face of the invocation of that right, the police persistently and repeatedly engage in efforts to wear down a suspect's resistance and make the suspect change his or her mind." *Id.* (citing *Michigan v. Mosley*, 423 U.S. 96, 105–06 (1975)).

Courts are more likely to find that a suspect unequivocally invokes his right to remain silent if the invocation is *before* substantive questioning. *Bailey v. State*, 31 So. 3d 809, 815 (Fla. 1st DCA 2009) (citing *Alvarez v. State*, 15 So. 3d 738, 744 (Fla. 4th DCA 2009)). Quoting the Fourth DCA, this Court reasoned, "[W]here a suspect has heard, understood, and waived his *Miranda* rights, and has been answering substantive questions without incident and continues to do so, a statement which may have been unambiguous if uttered initially may be objectively ambiguous when considered in context." *Id.* (quoting *Alvarez*, 15 So. 3d at 745).

The courts have found suspects' seemingly invocation-suggesting language equivocal when the context reveals ambiguity. In *Owen v. State*, the Florida Supreme Court held that the defendant's statements indicating he did not want to talk were merely equivocal. 862 So. 2d 687, 697 (Fla. 2003). During the interview (and after the defendant was Mirandized), the officer asked, "There's a few things that I have to know, Duane. A couple pieces don't fit. How did it come down? Were you looking at the particular house or just going through the neighborhood?" *Id.* at 697, n. 6. The defendant responded, "I'd rather not talk about it." *Id.* Shortly after, the officer asked, "Now, did you have a bicycle? Of course you did. Now, where did you put it?" *Id.* The defendant answered, "I don't want to talk about it." *Id.* The Court cited one of its earlier decisions on the same facts, in which the Court noted that the defendant made the statements in response to "relatively insignificant" details. *Id.* at 691 (citing *Owen v. State*, 560 So. 2d 207, 211 (Fla. 1990)). The Court therefore found the statements merely equivocal. *Id.*

4

In the same vein, this Court has held that a defendant's statement, "Man, I don't really want to talk about that," after the officer asked him about the relevant incident was merely equivocal. *Bailey v. State*, 31 So. 3d 809, 815–16 (Fla. 1st DCA 2009). This Court noted in *Bailey* that the defendant made the statement during the interrogation, rather than after being asked about his rights. *Id.* at 815. It also noted that the defendant "essentially mumbled the words in question and followed them with additional, indecipherable language." *Id.* at 816. This Court found the statement to be equivocal, concluding, "[t]he words on the recording simply do not come across as a clear assertion of a right." *Id.*

The courts have tended to hold that a defendant only unequivocally invokes his right when the statements and context are clear. In *Scott v. State*, this Court found that a defendant unequivocally invoked his right to remain silent during two separate interviews. 151 So. 3d 567, 578 (Fla. 1st DCA 2014). During the first interview, when asked whether he was present at the scene, the defendant responded, "No and *I am through with this interview*[.]" *Id.* at 569 (emphasis in original). When the officer clarified whether he wanted to talk, the defendant repeated that he was "*through with the interview*[.]" *Id.* (emphasis in original). The officer continued, and the defendant stated thrice that he was "*not fixing to sit*" there. *Id.* (emphasis in original). The officer then asked a substantive question, and the defendant again repeated, "*I am through with this interview.*" *Id.* at 569 (emphasis in original). But the officer continued with his questioning. *Id.* Two days later, the officers conducted another interview with the defendant. *Id.* at 572. The defendant made several statements, such as "I ain't talking to you," "I want to go back to my cell," "I just want my visitation," and "May I leave, man?" *Id.* This Court found that the defendant's statements constituted an unequivocal invocation of the right to remain silent. *Id.* at 578.

Similarly, in *Cuervo v. State*, the Florida Supreme Court held that a defendant invoked his right to remain silent by stating (in Spanish) that he did not want to "declare anything" when asked at the beginning of the interview whether he wanted to talk. 967 So. 2d at 163. The Court reasoned that unlike in *Owen*, where the

5

statements "I don't want to talk about it" and "I'd rather not talk about it," could have been referring to specific crimes, the defendant's statement in *Cuervo* was in direct response to a question about whether he wanted to talk after he was read his *Miranda* rights. *Id.*

The courts thus tend to find statements unequivocal only in particularly clear scenarios. *See Bussey v. State*, 184 So. 3d 1138, 1141 (Fla. 2d DCA 2015) ("On appeal, Bussey argues that the trial court erred in denying his motion to suppress because the detectives' promises of leniency and threats of the death penalty amounted to coercion that crossed constitutional boundaries and rendered his confession involuntary. We agree."). On the other side, the courts tend to find statements equivocal when their context lends ambiguity. *See Braddy v. State*, 111 So. 3d 810, 831 (Fla. 2012) (finding the answer, "I can't tell you. Even if I'm found innocent, my family will not talk to me again[,]" in response to a substantive question to be a mere equivocal invocation); *Alvarez*, 15 So. 3d at 742, 745–46 (finding that statements were equivocal when the defendant responded, after being asked whether he wanted to talk, "I really don't have nothing to say" and "I just don't know what to say.").

We find that the facts here are more analogous to *Owen*, *Bailey*, *Braddy*, and *Alvarez* than to *Scott* or *Cuervo*. Like *Owen*, *Bailey*, *Braddy*, and *Alvarez*, Mr. Denson made a one-off statement during the interrogation that did not clearly suggest that he wished to discontinue the entire interview. Unlike *Cuervo*, Mr. Denson did not make the statement at the beginning of the substantive questioning or when being asked about whether he wished to talk. And unlike in *Scott*, Mr. Denson did not make repeated statements or clear desires to stop the discussion entirely. Further, the interviewing officer did not "persistently and repeatedly engage in efforts to wear down [Mr. Denson's] resistance and make [him] change his . . . mind." *Deviney*, 112 So. 3d at 74 (citing *Mosley*, 423 U.S. at 105–06).

Mr. Denson sandwiched the soft-spoken statement "I just don't want to say nothing" in between expressing that he did not want to be tricked and that he felt stuck with the consequences of the incident. Like the defendant in *Bailey*, Mr. Denson "essentially

6

mumbled" his statement then continued talking. 31 So. 3d at 816. Like in *Owen*, Mr. Denson was not necessarily referring to not wanting to say anything *at all*, and he could have been referring to something specific. 862 So. 2d at 697; *see also Cuervo*, 967 So. 2d at 163. And the fact that Mr. Denson immediately proceeded to talk without the officer's prompting after saying that he "just don't want to say nothing" suggests that he did not intend to make a blanket invocation of the right to remain silent. Mr. Denson's alleged invocation was thus equivocal.

IV.

Because Mr. Denson's statement was equivocal, the officer was not required to stop the interview or ask clarifying questions. Mr. Denson's later confession to murder was therefore legally obtained. Thus, the trial court erred by granting Mr. Denson's motion to suppress.

REVERSED and REMANDED for further proceedings.

KELSEY, M.K. THOMAS, and NORDBY, JJ., concur.

—————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

—————————————

Ashley Moody, Attorney General, and Benjamin L Hoffman, Assistant Attorney General, Tallahassee, for Appellant.

Melissa Joy Ford, Assistant Regional Conflict Counsel, Tallahassee, for Appellee.