GROSS, J.
After a drive-by shooting, appellant Ja-varis Bruce was charged with three counts of attempted first-degree murder. A jury found him guilty of three counts of attempted voluntary manslaughter. We reverse because the trial court erred in failing to suppress Bruce’s statement to the police obtained in violation of article I, section 9 of the Florida Constitution.
To settle a score, Bruce drove four of his friends in his car to the Franklin Park Community Center, where they expected to find Jarvis Laramore and Eligha McFadden, the objects of their revenge. At least two of the car’s occupants brought their guns. After the car arrived, a number of gunshots sprayed from the car into the surrounding area and a stray bullet hit a person driving a car nearby. McFadden and Laramore ran away.
Several days after the shooting, Fort Lauderdale police officers arrested Bruce at his mother’s Fort Lauderdale home for the shooting. As police arrested him, Bruce instructed his mother to telephone his lawyer, Michael Rocque, to inform him of the situation. After a phone conversation with Bruce’s mother, Rocque understood that Bruce was hiring him. Rocque told Bruce’s mother to tell her son not to say anything to the police other than to express a desire to speak with legal counsel. As Bruce was being taken away by the Fort Lauderdale police, Bruce’s mother relayed the message. She also made the arresting officers aware that she was on the phone with her son’s attorney.
Immediately after receiving the.mother’s phone call, Rocque left a voice message with the Fort Lauderdale Police Department telling them that he was invoking Bruce’s right to remain silent and right to counsel. Additionally, Rocque faxed letters to the Fort Lauderdale Police Department and the Broward Sheriffs Office relaying the same , information. Rocque then prepared to go to the Fort Lauderdale Police Department to meet with Bruce, but before leaving his office Bruce’s mother told Rocque that her son was being taken to the Broward Sheriffs Office. Rocque arrived at the Broward Sheriffs Office at about 2:30 p.m., but was denied access to Bruce, who was being simultaneously interrogated. The detectives questioning Bruce were unaware that Rocque was seeking access to the interrogation room to see his client. Bruce signed a Miranda waiver form at 2:38 p.m. Bruce did not invoke his right to counsel. Over an hour later, Rocque was taken to the interrogation room. By *904 that time, Bruce had given a statement. In his recorded statement, Bruce admitted that he went to the scene to fight and that he fired a gun “two times, I don’t know.” Neither before nor during the interrogation was Bruce informed that his attorney was in the building trying to speak with him.
Bruce’s motion to suppress his statement argued, among other things, that the police conduct violated his rights under article I, sections 9 and 16 of the Florida Constitution. The trial court denied the motion reasoning that Bruce did not “personally invoke his right to counsel” and that the interrogating officers did not have “a duty to stop the interrogation of the defendant” because they “were not aware that Mr. Rocque was present to see the defendant.”
Haliburton v. State (Haliburton II), 514 So.2d 1088 (Fla.1987) compels the conclusion that the police conduct in this case denied Bruce due process of law under article I, section 9 of the Florida Constitution. With facts similar to those in this case, Haliburton I originally found a violation under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Haliburton v. State (Haliburton I), 476 So.2d 192 (Fla.1985). The United States Supreme Court vacated that decision and remanded it for reconsideration. Florida v. Haliburton, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986). On remand, the Florida Supreme Court again suppressed the defendant’s statement, basing its ruling on the Florida, and not the Federal, Constitution.
According to the facts set forth in Haliburton I, the defendant was arrested “at about 6:30 a.m., advised of his rights, and questioned until 9:30 a.m.” 476 So.2d at 193. “He submitted to a polygraph examination at 2:05 p.m.” Id.
Meanwhile [the defendant’s] sister retained an attorney to represent him. The attorney called the police near the end of the polygraph examination and requested that the questioning stop. The attorney arrived at the police station a few minutes before 4 p.m. and asked to speak with [the defendant], but was not allowed to do so. [The defendant] gave a recorded statement from 3:56 until 4:20 p.m. that was played to the jury. By 4:18 p.m. the attorney had a telephone court order requiring that the police give him access to [the defendant]. After the judge’s second phone call, the police chief ordered that the interrogation cease, and the attorney was able to see [the defendant].

Id.

The Supreme Court held in Haliburton I that “the police’s failure to notify [the defendant] that an attorney [retained on his behalf] was present and requesting to see him deprived [the defendant] of information essential to a knowing and intelligent waiver of his right to counsel under Miranda v. Arizona.” Haliburton II, 514 So.2d at 1089. See also Haliburton I, 476 So.2d at 193-94.
Under facts similar to Haliburton, the United States Supreme Court found no federal fifth or sixth amendment violation, but wrote that its decision did not disable “the States from adopting different requirements for the conduct of its employees and officials as a matter of state law.” Moran v. Burbine, 475 U.S. 412, 428, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). The United States Supreme Court vacated Ha-liburton I and remanded it for reconsideration in light of Burbine. Florida v. Haliburton, 475 U.S. at 1078, 106 S.Ct. 1452.
On remand, the Florida Supreme Court held that the police conduct in Haliburton I denied the defendant due process of law under article I, section 9 of the Florida Constitution. Haliburton II, 514 So.2d at 1090. The Supreme Court based the viola *905 tion on the failure of the police (1) to tell the defendant of his attorney’s telephone call and (2) provide the attorney with access to the defendant after he arrived at the police station. Id. The Court explained its ruling by quoting from Justice Stevens’ dissent in Burbine:
As Justice Stevens stated in his Burbine dissent, any “distinction between deception accomplished by means of an omission of a critically important fact and deception by means of a misleading statement, is simply untenable.” [475 U.S. at 458, 106 S.Ct. 1135] (Stevens, J., dissenting). Further, “there can be no constitutional distinction ... between a deceptive misstatement and the concealment by the police of the critical fact that an attorney retained by the accused or his family has offered assistance, either by telephone or in person.” Id. (footnote omitted).
Further, the attorney in the instant case not only telephoned the police station as to the status of his client, but subsequently arrived at the station and requested access. As the Oregon Supreme Court has observed, “[t]o pass up an abstract offer to call some unknown lawyer is very different from refusing to talk with an identified attorney actually available to provide at least initial assistance and advice, whatever might be arranged in the long run.” State v. Haynes, 288 Or. 59, 72, 602 P.2d 272, 278 (1979), cert. denied, 446 U.S. 945, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Haliburton was not told of the attorney’s presence or request.
Haliburton II, 514 So.2d at 1090.
Haliburton II remains good law. In Harvey v. State, the Supreme Court confronted a challenge to a defendant’s statements where a public defender heard of Harvey’s arrest and “took it upon himself’ to “go to the station to see if Harvey needed a lawyer.” 529 So.2d 1083, 1085 (Fla.1988), abrogated on other grounds by Fenelon v. State, 594 So.2d 292, 294 (Fla.1992). Finding that the public defender was “not Harvey’s lawyer,” the Supreme Court distinguished Haliburton II as a case where
the defendant’s sister had called a specific attorney and asked him to represent her brother. The police refused to permit the attorney to see Haliburton even after a judge had ordered them to do so. Here, neither Harvey nor anyone from his family requested that an attorney come to the police station to talk with him.
Harvey, 529 So.2d at 1085.[1]
The first district followed Haliburton II in State v. Allen, 548 So.2d 762 (Fla. 1st DCA 1989), a case factually similar to this one. There, the defendant gave a statement “as an attorney secured for the [defendant] by members of his family was attempting to reach him.” Id. at 763. The police failed to inform the defendant that the attorney was trying to contact him by telephone and “while there was no deliberate deception by the sheriffs office,” the defendant’s “location was easily ascertainable.” Id. The first district affirmed the trial court’s suppression of the defendant’s statement, relying on Haliburton II. Id. at 764. The court “emphasized that the constitutional error” was “the failure to tell the [defendant] that an attorney wished to speak with him.” Id. The court held that a constitutional violation oc *906 curred even though the police did not intentionally block communication between the attorney and the defendant. Id.
This case presents a stronger case for a due process violation under article I, section 9 than both Haliburton II and Allen. Here, it was Bruce who asked his mother to call his lawyer with the intention of retaining him; this was not a case where relatives secured a lawyer on a defendant’s behalf. Under Haliburton II, a suspect must be informed promptly of efforts by a lawyer to provide legal assistance relating to the detention; this means that the police must advise a defendant that a lawyer is present in the station house and available to speak with him. Armed with that information, the suspect may choose whether he wishes to speak with counsel. If he desires to do so, interrogation must cease. Only if a suspect decides to forego the assistance of counsel, may interrogation continue and counsel be denied access. Because they are responsible for the suspect’s isolation, the police have a duty to act reasonably, diligently, and promptly to provide the defendant with accurate information.
The police cannot rely on the failure to notify interrogators of a lawyer’s presence to skirt the article I, section 9 due process requirements imposed by Haliburton II. Thus, the fact that the interrogating detectives in this case were unaware of Roc-que’s presence at the station house is without legal significance. To allow the police to hide behind the imprecise standard of the good faith ignorance of the interrogators would encourage law enforcement to be deaf and blind to a lawyer’s attempts to contact his client in the station house. In this case, Rocque was present in the station house seeking access to Bruce before Bruce signed the Miranda waiver. The motion to suppress the statements should have been granted.
For these reasons, we reverse the convictions for attempted voluntary manslaughter and remand to the circuit court for a new trial.
WARNER and STEVENSON, JJ., concur.

. In Smith v. State, a case involving an appointment of counsel prior to a defendant's arrest, which the opinion characterizes as "a nullity,” the Supreme Court distinguished Ha-liburton II as an article I, section 9 case, not one involving a "question of waiver under the Sixth Amendment,” and found that "the offensive police misconduct which compelled the decision in Haliburton [II] was not present.” 699 So.2d 629, 639 (Fla.1997).