POLSTON, J.,
concurring in part and dissenting in part.
I agree with the majority that the trial court reversibly erred by admitting Mc-Adams’ confession. Similar to the majority, I believe that McAdams was in custody before he confessed based upon the fact that he was informed, in response to a direct question after being confronted with incriminating evidence, that it was uncertain whether he could leave the sheriffs office. See Ramirez v. State, 739 So.2d 568, 573 (Fla.1999) (“A person is in custody if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest.”). There-, *845 fore, because McAdams was in custody and officers failed to advise him of his Miranda rights, the trial court should have suppressed McAdams’ confession.
Once McAdams was in custody, this Court’s decision in Haliburton v. State, 514 So.2d 1088 (Fla.1987) (Haliburton II), required law enforcement to notify Mc-Adams that his family had retained counsel for him and that this counsel would like to speak with him.' In Haliburton II, this Court adopted a dissent regarding the right to due process under the United States Constitution to create a broader right to due process under the Florida Constitution. Specifically, quoting Justice Stevens’ dissent in Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), this Court in Haliburton II held that the failure to inform Haliburton of privately retained counsel after, he was in custody and Mirandized was “[p]olice interference in the attorney-client relationship [and] the type of governmental misconduct on a matter of central importance to the administration of justice that the Due Process Clause prohibits.” Haliburton II, 514 So.2d at 1090 (quoting Burbine, 475 U.S. at 467, 106 S.Ct. 1135 (Stevens, J., dissenting)). Accordingly, pursuant to Haliburton II, any evidence collected between the time McAdams was in custody and when law enforcement informed him of the attorney should have been suppressed as a violation of Florida’s due process clause. '
However, I disagree with the majority’s extension of our decision in Haliburton II to voluntary interactions with law enforcement. As the Second District cogently explained, “[n]either Haliburton nor any other case [cited] holds that it is misconduct for law enforcement officers to refuse to interrupt a noncustodial interview to permit an attorney access to a suspect who has voluntarily agreed to be interviewed.” McAdams v. State, 137 So.3d 401, 407 (Fla. 2d DCA 2014). In fact, cases in which Florida district courts have held that due process violations occurred pursuant to Haliburton II involved custodial interrogations, not voluntary interviews. See Bruce v. State, 92 So.3d 902 (Fla. 4th DCA 2012); State v. Allen, 548 So.2d 762 (Fla. 1st DCA 1989). Furthermore, the conclusion that Haliburton II only applies while a suspect is in custody is supported by and entirely consistent with this Court’s precedent that protection’s for the right against self-incrimination under the Florida Constitution only apply in custodial settings. See Traylor v. State, 596 So.2d 957, 966 (Fla.1992) (holding that a suspect must be properly advised of his right to counsel in order to protect his right against self-incrimination under the Florida Constitution but explaining that “[t]hese guidelines apply only to statements obtained while in custody and through interrogation;' they do not apply to volunteered statements initiated by the suspect or statements that are obtained in noncustodial settings or through' means other than interrogation”) (footnotes omitted); see also Roman v. State, 475 So.2d 1228, 1233 (Fla.1985) (concluding that “police officers questioning a suspect in a noncustodial setting [were not required to] comply with an attorney’s request that they cease questioning the suspect and then inform the suspect of the attorney’s call”) (emphasis added).
To be clear, the defendant in Haliburton II (like the defendant in this case) was in custody when privately retained counsel informed law enforcement of counsel’s presence and purpose. See Haliburton v. State, 476 So.2d 192, 193 (Fla.1985) (Haliburton I). And because both Haliburton and McAdams were in custody, it is unnecessary and inappropriate for this Court to address whether Haliburton II should apply to non-custodial interviews.
The only reason given by the majority for extending Haliburton II to voluntary *846 interactions in a case about evidence collected while the defendant was in custody is the majority’s desire to “implement a bright-line rule” to avoid “determinations of when voluntary questioning evdlves into custodial interrogation [that] will spawn hundreds of thousands of dollars in costs or expenses and hours in litigation.” Majority op. at'832. 'However, the majority then goes on to determine the exact issue that it claims is too burdensome to litigate, namely that the defendant was in custody at the- time the retained lawyer informed law enforcement of the desire to speak to the defendant. Moreover, the bright-line rule the majority adopts for pragmatic reasons is npt justified because custody issues will still need to be decided pursuant to the United States Supreme Court’s decision in" Miranda and this Court’s decision in Traylor. . Specifically, in order to determine whether incriminating statements made to law enforcement are admissible at trial, Florida courts will still need to decide whether a suspect was in custody and, if the suspect was in custody (even if that suspect was informed of retained counsel), whether any waiver, of rights was, voluntary,. knowing, and intelligent. See Ramirez, 739 So.2d at 572-73 (“Both the United States and Florida Constitutions provide that persons shall not be ‘compelled’ to be witnesses against themselves in any criminal matter, U.S. Const, amend. V; art. I, § 9, Fla. Const. This constitutional guarantee ‘is fully applicable during a period of custodial interrogation.’ Miranda v. Arizona, 384 U.S. 436, 460-61 [86 S.Ct 1602, 16 L.Ed.2d 694 (1966) ].”).
Accordingly, I respectfully concur in part and dissent in part.
CANADY, J., concurs.