IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

REGINALD GREENWICH,

     Appellant,

v.                                  Case No.  5D15-1361

STATE OF FLORIDA,

     Appellee.

_____/

Opinion filed September 9, 2016

Appeal from the Circuit Court
for Orange County,
Keith A. Carsten, Judge.

James S. Purdy, Public Defender, and
Edward J. Weiss, Assistant Public
Defender, Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Samuel A. Perrone,
Assistant Attorney General, Daytona
Beach, for Appellee.


LAMBERT, J.

     Early one morning in August 2013, Reginald Greenwich shot his fiancée in the

head, at close range, while she was lying in bed in the apartment that the two of them

shared together.  She died shortly thereafter, and Greenwich was arrested and charged

with second-degree murder with a firearm. A jury found Greenwich guilty, and the trial court sentenced him to serve life in prison.

Greenwich raises three issues in this appeal, with the first two challenging the trial court's denial of his motion to suppress statements that he made to law enforcement during a custodial interrogation. Greenwich first argues that during his interrogation, he made an unequivocal invocation of his constitutional due process right to remain silent, which was ignored by the police. Greenwich maintains that any statements he made to the officers thereafter during his interrogation should have been suppressed. Second, Greenwich asserts that law enforcement denied him his constitutional right to due process when the detectives interrogating him failed to advise him that his stepfather, Daniel Paige ("Paige"), who is also a criminal defense attorney, had telephoned the police department to speak with Greenwich. Greenwich asserts that his inculpatory statements during the interview occurred after Paige's phone call and, therefore, must be suppressed for being constitutionally infirm.

In denying the motion to suppress after an evidentiary hearing, the court found, as to the first issue, that Greenwich's statement made to the detectives during the interview—"Please stop this. You're giving me a headache and you're frustrating me very much so."—was not an unambiguous request by Greenwich to invoke his right to remain silent or his right to counsel. Therefore, the court concluded that the detectives were not obligated to discontinue their questioning. On the second issue, the trial court found that there was no evidence that Paige had been "retained" by Greenwich or that the detectives interviewing Greenwich knew that Paige was an attorney who was attempting to advise or represent Greenwich. Accordingly, this led the court to find that Greenwich had not

2

been denied access to counsel. The court thus concluded in its order that, based upon its examination of the totality of the circumstances, Greenwich had knowingly, voluntarily, and intelligently waived his privilege against self-incrimination and his right to counsel and that his due process rights had not been violated by the aforementioned conduct of the police. For the following reasons, we affirm the trial court's ruling on the first ground but reverse on the second.

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and a reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustain a trial court's ruling." *D.B.P. v. State*, 31 So. 3d 883, 884–85 (Fla. 5th DCA 2010) (citing *Doorbal v. State*, 837 So. 2d 940, 952 (Fla. 2003) (additional citations omitted)). An appellate court reviews the trial court's findings of fact to determine whether they are supported by competent substantial evidence, and it reviews the trial court's conclusions of law de novo. *Id.* at 885 (citing *Bevard v. State*, 976 So. 2d 1163 (Fla. 5th DCA 2008) (additional citations omitted)).

Based upon the varying explanations provided by Greenwich to the police officers who first arrived at the crime scene as to how the shooting occurred, coupled with the physical evidence found by the officers in the apartment, which was inconsistent with Greenwich's versions of the event, the police began to consider Greenwich as a suspect. Greenwich was eventually taken into custody at the crime scene and thereafter transported to the Orlando Police Department for further questioning. After Greenwich had sat for a considerable period of time in a small interrogation room, two detectives entered the room to begin interviewing him. One of the detectives read to Greenwich the

3

rights afforded to him under *Miranda v. Arizona*, 384 U.S. 436 (1966) ("*Miranda* rights").

Greenwich indicated that he understood these rights and voluntarily agreed to speak with

the detectives.

During the interview, Greenwich provided multiple versions of how the shooting

occurred, changing his story each time the detectives provided him with additional

evidence. After approximately three hours of questioning, the following exchange took

place:

> GREENWICH: In the meantime, I can get on the street and find out what I need to know.
>
> DETECTIVE: Okay. Alright. So where we are is, the extent of your knowledge is: you're in the room, she gets shot, you hear it, you see it, and it's with a handgun.
>
> GREENWICH: This is just repetition for you guys, right? You guys just keep going over the same thing over and over and over and over.
>
> DETECTIVE: I just want to make sure that I have your version of the truth. Do we have your version of the truth?
>
> GREENWICH: Please stop this. You're giving me a headache and you're frustrating me very much so. And I can really be getting to the bottom line and find out who the fuck did this.
>
> DETECTIVE: Okay.
>
> GREENWICH: This is a waste of my time.
>
> DETECTIVE: Okay. And I think you've probably been wasting our time long enough, as well. Don't you?
>
> GREENWICH: No, I don't.
>
> DETECTIVE: You don't think you've been wasting our time with your five different versions of the event?
>
> GREENWICH: I don't think I've been wasting your time at all.

4

After an approximate twenty-minute break, the interview resumed, and, during this part of the interrogation, Greenwich provided what turned out to be his final explanation of the incident. He admitted that he shot his fiancée, but he then went into detail explaining how the shooting was accidental.[1]

The Fifth Amendment of the United States Constitution provides the right against self-incrimination. *See* Amend. V, U.S. Const. (stating that no person "shall be compelled in any criminal case to be a witness against himself"). If the police obtain statements from a defendant in violation of the right against self-incrimination, the State cannot use these statements against the defendant, and the trial court must exclude them from trial. *Deviney v. State*, 112 So. 3d 57, 72 (Fla. 2013) (citing *Cuervo v. State*, 967 So. 2d 155, 160 (Fla. 2007)). Here, Greenwich does not dispute that initially, he voluntarily waived his right to remain silent. However, once an interrogation has commenced, a suspect is entitled to reassert his right to remain silent and not incriminate himself and to terminate the interrogation, *Traylor v. State*, 596 So. 2d 957, 966 (Fla. 1992), provided that the suspect makes an unequivocal invocation to end the questioning. *Deviney*, 112 So. 3d at 74 ("Once the police have properly administered *Miranda* warnings to a suspect, and the suspect validly waives those rights, law enforcement need only cease questioning upon an *unequivocal* invocation to terminate the interrogation." (citing *State v. Owen*, 696 So. 2d 715, 719 (Fla. 1997); *Davis v. United States*, 512 U.S. 452, 461 (1994))).

Thus, at the suppression hearing, the trial court was tasked with determining whether Greenwich had unequivocally invoked his right to remain silent during the

---

[1] At trial, the State presented evidence that tended to negate Greenwich's explanation of an accidental shooting.

interrogation. "A suspect unequivocally invokes the right to remain silent if, with sufficient clarity, he or she expresses a desire to end questioning in such a manner that a reasonable officer under the circumstances would understand that the suspect has invoked his or her right to end questioning." *Id.* (citing *Owen*, 696 So. 2d at 718). There are no "magic words" that a suspect must use to invoke the right against self-incrimination. *Id.* (citing *Owen*, 696 So. 2d at 719). However, when a suspect fails to unequivocally invoke his or her right to remain silent, a law enforcement officer is not required to ask clarifying questions because such a requirement would impose too great an impediment on law enforcement's efforts and ability to thwart crime and promote public safety. *Id.* at 75 (citing *Owen*, 696 So. 2d at 719). Stated differently, if the suspect's invocation to end the interrogation is equivocal, then law enforcement may continue with their questioning. *Id.* at 74 (citing *Owen*, 696 So. 2d at 719).

Greenwich argues on appeal that his statement "please stop this, you're giving me a headache" is unambiguous. We disagree, as it is not clear whether Greenwich wanted the detectives to end the interrogation entirely or merely stop what Greenwich perceived as being an overly repetitive line of questioning as to his version of events that morning. Under these circumstances, the detectives were not required to discontinue their questioning, and the trial court correctly denied Greenwich's motion to suppress on this ground.

Greenwich next argues that his constitutional right to due process was violated when the trial court denied his motion to suppress the statements that he made to the detectives after his stepfather, Paige, a criminal defense attorney, had telephoned the police department to speak with Greenwich and was not given access to him. Paige and

6

Greenwich's mother were at church in Clewiston, Florida, on the morning of the shooting, when Greenwich's sister left them a message on their phone, advising them that Greenwich had been arrested regarding an incident involving his fiancée. Paige and his wife began driving toward Orlando. While in route, Paige made telephone calls to determine where Greenwich was located and eventually spoke with a receptionist at the Orlando Police Department. The unrebutted testimony at the suppression hearing was that Paige advised the receptionist that he was Greenwich's attorney and stepfather. The receptionist referred Paige to the lead detective on Greenwich's case, and Paige left voicemail messages on the detective's phone, advising that he was Greenwich's stepfather and that he was an attorney. The detective did not check his voicemail until after the interview had essentially concluded. Moreover, the receptionist did not notify the detective that Paige was an attorney, only that a "Dan Paige" wanted to speak with him about the case. Although Paige eventually consulted with Greenwich at or near the conclusion of the interview, Greenwich had, by that time, made multiple statements to the detectives regarding the events concerning the shooting that the State successfully used against him at trial.

In *Haliburton v. State* (*Haliburton I*), 476 So. 2d 192 (Fla. 1985), the defendant had been taken to a police station for questioning regarding a murder and burglary. 476 So. 2d at 193. He was advised of his *Miranda* rights and agreed to be interrogated. *Id.* The defendant's sister retained counsel for him. *Id.* The attorney first telephoned the police station, requesting that a polygraph examination of the defendant be stopped, and then arrived at the station shortly thereafter, but the attorney was not allowed to speak with the defendant. *Id.* During the interview, the defendant essentially admitted to the burglary

7

and to observing the victim's body but did not admit to the murder. *Id.* The defendant's pretrial attempt to suppress his statements to the police was unsuccessful, and, following a jury trial, he was convicted of first-degree murder and burglary. *Id.*

In reversing the defendant's convictions,[2] the Florida Supreme Court found that the police's failure to notify the defendant that an attorney was present and requesting to see him deprived the defendant of information essential to a knowing and intelligent waiver of his right to counsel under *Miranda*. *Id.* at 193–94. The United States Supreme Court subsequently vacated *Haliburton I* and remanded the case for reconsideration in light of its opinion of *Moran v. Burbine*, 475 U.S. 412 (1986). *Florida v. Haliburton*, 475 U.S. 1078 (1986). In *Burbine*, the Court determined that misstatements by law enforcement to a suspect's attorney who had telephoned the police station to speak with his client did not undermine the suspect's waiver of his Fifth Amendment right against self-incrimination so as to require exclusion of the suspect's later inculpatory statements during a custodial interrogation. 475 U.S. at 423–24. The Court considered the police conduct irrelevant as it found that knowledge of the attorney's telephone call was not essential to a knowing and intelligent waiver of the suspect's *Miranda* rights. *Id.* at 422–23. However, the Court acknowledged that its decision did not prohibit "the States from adopting different requirements for the conduct of its employees and officials as a matter of state law." *Id.* at 428.

In *Haliburton v. State* (*Haliburton II*), 514 So. 2d 1088 (Fla. 1987), on remand, the Florida Supreme Court again reversed the defendant's convictions, finding that the above

---

[2] The defendant was sentenced to death for the first-degree murder, resulting in the Florida Supreme Court having jurisdiction over the direct appeal. Art. V, § 3(b)(1), Fla. Const.

described conduct of the police, in failing to notify defendant that an attorney was present and requesting to see him, violated the due process provisions of article I, section 9 of the Florida Constitution. 514 So. 2d at 1090. The court agreed with the dissenting opinion of Justice Stevens in *Burbine* that

> due process requires fairness, integrity, and honor in the operation of the criminal justice system, and in its treatment of the citizen's cardinal constitutional protections. . . . [P]olice interference in the attorney-client relationship is the type of governmental misconduct on a matter of central importance to the administration of justice that the Due Process Clause prohibits. . . . Just as the government cannot conceal from a suspect material and exculpatory evidence, so too the government cannot conceal from a suspect the material fact of his attorney's communication.

*Id.* (quoting 475 U.S. at 467 (Stevens, J., dissenting)).

In the present case, there is no evidence that the police either intentionally or fraudulently tried to conceal from Greenwich the phone call made by his attorney, Paige, offering assistance. However, this is neither critical nor dispositive as to the issue before us. In *Haliburton II*, the court also adopted the following additional language from Justice Stevens' dissent in *Burbine* when it determined that "there can be no constitutional distinction . . . between a deceptive misstatement and the concealment by the police of the critical fact that an attorney retained by the accused or his family has offered assistance, either *by telephone or in person*." *Id.* (omission in original) (emphasis added) (quoting *Burbine*, 475 U.S. at 453 (Stevens, J., dissenting)).

More recently, in *State v. McAdams*, 193 So. 3d 824 (Fla. 2016), the Florida Supreme Court addressed whether, under the Due Process Clause of the Florida Constitution, a person who is being questioned by law enforcement in a non-public location must be notified that an attorney retained on his or her behalf is at the location

9

and available to speak with him or her. In *McAdams*, the detectives were questioning the defendant because his estranged wife and her boyfriend/coworker had been reported missing, when an attorney retained by his parents arrived at the sheriff's office and was available to assist him. *Id.* at 826–27. However, the detective conducting the interrogation decided not to stop the questioning or to allow the attorney to have access to the defendant because he was not in custody. *Id.* at 827. The defendant thereafter confessed to killing his wife and her boyfriend and was arrested and charged with their murders. *Id.* Prior to trial, McAdams sought to suppress his confession because of the failure of law enforcement to notify him with regard to the presence of his attorney. *Id.* at 827–28. The trial court denied the motion, and McAdams was ultimately convicted of two counts of first-degree murder. *Id.* at 828.

On appeal, the Second District Court of Appeal reversed the judgment and sentences. *McAdams v. State*, 137 So. 3d 401 (Fla. 2d DCA 2014). The court held that the detective's failure to inform the defendant that an attorney was available and waiting to talk to him at the time the defendant was not in custody did not violate the defendant's right to consult with counsel. *Id.* at 407. The court did, however, hold that any statements or confessions made by the defendant after he was in custody and was not informed of the availability of counsel violated his right to due process and should have been suppressed. *Id.* at 407–08.

The Florida Supreme Court accepted jurisdiction and quashed the Second District's opinion. *McAdams*, 193 So. 3d 824. The court found that the defendant's right to due process under the Florida Constitution was violated, and it implemented a bright-line rule that a suspect who is being questioned in a location that is not open to the public

has the right to be notified regarding the presence and purpose of the attorney retained on his or her behalf, regardless of whether the suspect is in custody. *Id.* at 832. The court noted that, under its interpretation of the Due Process Clause of the Florida Constitution, it is the individual who is given the knowledge and power to take advantage of the attorney's services. *Id.* at 832.

We acknowledge and recognize that in *McAdams*, defense counsel was present at the sheriff's office when he was denied access to his client while, in the present case, Paige was not physically present at the police station when Greenwich was being questioned in a non-public area, but instead was contacting Greenwich by phone to provide legal assistance. Under the facts of this case, we do not find this difference to be material. As indicated in *Haliburton II*, the constitutional protection afforded to a suspect of the right to consult with counsel arises when the attorney has been retained by the accused or his family and has offered assistance *by telephone* or in person. 514 So. 2d at 1090. Accordingly, we conclude that the trial court in the instant case erred by placing legal significance in its written denial order that, at the time of the phone call, Paige was not physically present at the police station. Additionally, we find that the trial court also erred in denying the motion to suppress based on its conclusion that Paige had not been "retained" by Greenwich. *Haliburton II* provides constitutional protection when an attorney retained by the accused *or his family* has offered assistance. Paige, as a family member, was not required to formally "retain" himself on behalf of Greenwich before offering legal assistance.[3]

---

[3] Paige did appear as one of Greenwich's counsel in the proceedings below.

11

Finally, based on the facts of this case, the fact that the detectives were personally unaware during their interrogation of Greenwich that Paige was an attorney is not material to our constitutional analysis. As the Fourth District Court of Appeal cogently explained in *Bruce v. State*, 92 So. 3d 902, 906 (Fla. 4th DCA 2012):

> The police cannot rely on the failure to notify interrogators of a lawyer's presence to skirt the article 1, section 9, due process requirements imposed by *Haliburton II*. Thus, the fact that the interrogating detectives in this case were unaware of [the attorney's] presence at the station house is without legal significance. To allow the police to hide behind the imprecise standard of the good faith ignorance of the interrogators would encourage law enforcement to be deaf and blind to a lawyer's attempts to contact his client . . . .

It is unclear why the receptionist at the Orlando Police Department who received Paige's telephone call did not specifically notify the interrogating detectives in her communication to them that Paige was Greenwich's attorney and wanted to speak with him, but this failure to do so does not inure to the benefit of the state.[4]

*Haliburton II* and *McAdams* compel the conclusion that the constitutional error or violation in the present case occurred when law enforcement failed to tell Greenwich that his attorney was on the telephone and wished to speak with him, even if the police did not intentionally try to block Greenwich's communication with his attorney. *See State v. Allen*, 548 So. 2d 762, 765 (Fla. 1st DCA 1989) (finding that the trial court did not err in suppressing defendant's statements to police after police failed to inform defendant that his attorney was trying to contact him by telephone when the defendant's location was easily ascertainable and the police did not intentionally block communication between the

---

[4] To be clear, we do not attribute any intentional misconduct by either the receptionist or the detectives involved in this case.

12

attorney and the defendant). Simply put, if Greenwich had been advised of Paige's telephone call, he could have then decided whether to speak with him and thereafter determined whether to continue with the interrogation or not. Because our record is clear that this constitutional error was harmful, we reverse the conviction and remand for a new trial. However, because the record also established that Greenwich did continue to speak with the detectives even after he consulted with Paige, on retrial, only those statements made by Greenwich to the detectives during the interview but prior to his communicating with Paige should be excluded.

To facilitate the retrial that we have now ordered, we address the separate evidentiary issue raised by Greenwich in this appeal. Greenwich argues that the trial court erred in admitting into evidence, over objection, that his cellphone accessed pornographic websites subsequent to the shooting and at a time when he had already met with the police at the crime scene. We agree, as we fail to see how this evidence is relevant as to whether Greenwich murdered his fiancée earlier that morning. *See* § 90.401, Fla. Stat. (2013) (defining relevant evidence as "evidence tending to prove or disprove a material fact"). Furthermore, even if this evidence were remotely relevant, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. *See* § 90.403, Fla. Stat. (2013) ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."). "The unfair prejudice that section 90.403 attempts to eliminate relates to evidence that 'inflames the jury or appeals improperly to the jury's emotions.'" *State v. Gerry*, 855 So. 2d 157, 159 (Fla. 5th DCA 2003) (quoting *State v. McClain*, 525 So. 2d 420, 422 (Fla.

1988) (additional citations omitted)). Accordingly, evidence that Greenwich's cellphone accessed pornographic websites subsequent to the shooting shall be excluded on retrial.

REVERSED and REMANDED for a new trial.

COHEN, J., and LEMONIDIS, R.C., Associate Judge, concur.