470 So.2d 1377 (1985)
STATE of Florida, Appellant,
v.
Beauford WHITE, Appellee.
No. 64791.
Supreme Court of Florida.
April 25, 1985.
Rehearing Denied July 11, 1985.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., Miami, for appellant.
Bennett H. Brummer, Public Defender and Thomas G. Murray, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for appellee.
SHAW, Justice.
Appellee was convicted in 1978 of six counts of first-degree murder, two counts of attempted first-degree murder, and four counts of robbery. He was sentenced to *1378 death for each of the first-degree murders and to life imprisonment for each of the remaining convictions. On direct appeal, this Court affirmed the death penalties in White v. State, 403 So.2d 331 (Fla. 1981), and the United States Supreme Court denied a petition for writ of certiorari in White v. Florida, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). In addition, appellee joined as a petitioner with 123 other death-sentence defendants in their applications for extraordinary relief and petitions for writs of habeas corpus. These petitions were denied in Brown v. Wainwright, 392 So.2d 1327 (Fla.), cert. denied, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). On 19 January 1984, Governor Graham signed a death warrant ordering appellee's execution during the week beginning at noon, 3 February 1984. On 23 January 1984, appellee filed motions in the trial court seeking post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and a stay of his execution scheduled for 7 February 1984. The trial court granted the stay of execution and vacated the death sentences on the ground that the death sentences were constitutionally impermissible in view of the holding in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Thereafter, we entered an order continuing the stay of execution pending disposition of this appeal by the state.
We first address our jurisdictional authority to hear the state's appeal. Appellee urges that appellate review of a criminal proceeding is not available except as specified in section 924.07, Florida Statutes (1981), which contains no provision authorizing appeal by the state from an order granting post-conviction relief. Appellee also urges that the trial court order from which appeal is sought is the functional equivalent of an acquittal and that this serves to bar appellate review under the double jeopardy clause of the state and federal constitutions.[1]
Appellee misunderstands the nature of collateral post-conviction remedies such as those provided by rule 3.850 and writs of error coram nobis and habeas corpus. Rule 3.850 provides a judicial remedy whereby a post-conviction motion for relief may be heard in the trial court where the records and witnesses and others with knowledge of the case are likely to be. Thus, the rule avoids both the cumbersomeness of the writ of error coram nobis whereby a petition is addressed to the cognizant appellate court seeking authority to approach the trial court and the inefficiency of the writ of habeas corpus which entails approaching a court unfamiliar with the case at hand. State v. Matera, 266 So.2d 661 (Fla. 1972); Roy v. Wainwright, 151 So.2d 825 (Fla. 1963). These post-conviction collateral remedies are not steps in a criminal prosecution but are in the nature of independent collateral civil actions governed by the practice of appeals in civil actions from which either the government or the defendant (petitioner) may appeal. See generally State v. Weeks, 166 So.2d 892 (Fla. 1964); State v. Jackson, 414 So.2d 281 (Fla. 4th DCA 1982); and Tolar v. State, 196 So.2d 1 (Fla. 4th DCA 1967).[2] Inasmuch as this Court affirmed appellee's convictions and sentences in White v. State, it is this Court which has appellate jurisdiction to hear appeals from post-conviction proceedings on appellee's sentences and convictions. We note also that rule 3.850, by its own terms, provides that "[a]n appeal may be taken to the appropriate appellate court from the order entered on *1379 the motion as from a final judgment on application for writ of habeas corpus."
The state argues that even if Enmund represents a change in the law within the meaning of Witt v. State, 387 So.2d 922 (Fla.) cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), appellee has fully litigated the application of the death penalty to himself under the circumstances of the case on direct appeal and in his petition for a writ of certiorari before the United States Supreme Court. Thus, appellee should not be permitted to relitigate the issue in a collateral proceeding. It is true that appellee contended on direct appeal that the Florida death penalty statute violated the eighth amendment prohibition against cruel and unusual punishment under the United States Constitution, in that the statute permitted the infliction of death upon a defendant who lacked a purpose to cause the death of his victim, and that we rejected that contention under then-extant constitutional law. It is also true, however, that Justice White's dissenting opinion in Lockett v. Ohio, 438 U.S. 586, 625, 98 S.Ct. 2954, 2983, 57 L.Ed.2d 973 (1978), on which appellee relied, has, at least in part, become the law of the land. Enmund. We have no doubt that Enmund, overturning as it did centuries of law, represents a major change in constitutional law and that we are obligated to revisit this case in order to determine if Enmund prohibits the imposition of the death penalty under the facts and circumstances of this case. We also realize that the United States Supreme Court's denial of appellee's petition for writ of certiorari in 1983, grounded on Enmund more than a year after Enmund issued, would seem to suggest that the Court saw no Enmund implications in the case. Nevertheless, the rule is that "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923).
We turn now to the merits: whether Enmund prohibits the imposition of the death penalty under the facts and circumstances of this case. In Enmund, the defendant was convicted on two counts of felony murder (robbery) in the first degree and sentenced to death. The facts were that Enmund and two co-felons set out to rob an elderly couple at an isolated farmhouse; that Enmund remained in the car several hundred feet away while his accomplices undertook the actual robbery; that during the course of the robbery, the two victims unexpectedly resisted and were shot dead by the co-felons; and that the three felons fled the scene together. This Court affirmed the death sentence on the theory that the felony-murder rule and the law of principals combined to make a felon generally responsible for the lethal acts of his co-felons. In doing so, we expressly rejected the argument that the eighth amendment to the United States Constitution barred the imposition of the death penalty when the evidence does not establish that the defendant intended to take life. On certiorari review, the United States Supreme Court found relevant that which we had found irrelevant: Enmund did not himself kill, was not present at the killings, did not intend that the victims be killed, and did not anticipate that lethal force would or might be used if necessary to effectuate the robbery or a safe escape. The court concluded "that imposition of the death penalty in these circumstances is inconsistent with the Eighth and Fourteenth Amendments," Enmund, 458 U.S. at 788, 102 S.Ct. at 3372, and that the eighth amendment does not permit the "imposition of the death penalty on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Id. at 797, 102 S.Ct. at 3376.
We now compare and contrast the circumstances here with those in Enmund to determine if Enmund prohibits the imposition of the death sentence in this case. We draw our facts from our original opinion in *1380 White v. State. Appellee and two companions gained entrance to a home under a subterfuge purportedly in order to "rip off a dope man." All three men were armed and all three wore masks covering their faces from the nose down. An occupant of the home was blindfolded and her hands tied behind her back. The three men ransacked the house looking for valuables. Within approximately one hour seven other persons arrived at the house and were seized and forced to lie face down on the floor with their hands tied behind their backs. At some point the mask of one of the two co-conspirators fell from his face. The three conspirators discussed the need for killing the victims with appellee verbally opposing the killings. Thereafter, two of the victims were moved to a separate room and the two co-conspirators set about systematically shooting the eight captives in the back of the head. Six were killed and two survived. Appellee was present in the house during this carnage, but did none of the shooting. The three co-conspirators then gathered up their loot and returned to appellee's motel room where the loot was divided. A fourth participant, who acted as a wheelman and never entered the home, testified that he and appellee were duped into what he later discovered was a planned contract murder of one or perhaps two of the victims. He also testified that appellee was upset afterwards and refused to participate in the disposal of the weapons.
In comparing the facts and circumstances here with those in Enmund, we find what we consider to be highly significant distinctions. First, Enmund was not present at the robbery/murder premises whereas appellee was present before, during, and after the robbery and murders. Second, Enmund had no active role in the actual robbery or murders whereas appellee was armed and participated fully in capturing, intimidating, and guarding the robbery/murder victims. Third, Enmund did not intend or contemplate that lethal force would be used in carrying out the robbery. While appellee verbally opposed the killing during the discussion preceding the murders, he did nothing to disassociate himself from either the murders or the robbery. After the discussion relative to killing the victims, whatever appellee might have originally intended or contemplated about lethal force being used in the robbery, it can hardly be said that he did not realize that lethal force was going to be used in carrying out the robbery. On this point we refer to our rejection on direct appeal of appellee's argument in mitigation that his participation was relatively minor and that he acted under extreme duress or substantial domination of another:
We find absolutely no evidence to support the assertion that defendant acted under coercion or the domination of another. We also do not find that the defendant played a minor role as an accomplice. He fully participated in the subduing and intimidation of the victims, in ransacking the house looking for valuables and stood by while the victims were shot one by one. It was his motel room which was used as a place to plan the crimes and to divide the loot after the crimes were completed.
White v. State, 403 So.2d at 339.
We hold that Enmund does not bar the imposition of the death penalty under these facts and circumstances.
We vacate the orders staying appellee's execution and reverse the trial court's order granting appellee's 3.850 motion on the basis that Enmund bars the imposition of the death penalty.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN and EHRLICH, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
McDONALD, J., dissents with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I concur in that part of the majority opinion which holds that the state may appeal from an adverse judgment in a 3.850 post-conviction relief proceeding. I disagree, *1381 however, that a criminal rule 3.850 motion is a civil proceeding. That characterization makes no sense to me, particularly when this Court created this rule as criminal rule 1 and then subsequently redesignated it as criminal rule 3.850. The purpose of creating this rule was to provide an expeditious remedy for attacking a criminal judgment or sentence: imposed in violation of the constitution or laws of the United States or of Florida; imposed by a court without jurisdiction to render the judgment; when the sentence exceeds the maximum authorized by law; or when the proceeding is otherwise subject to collateral attack. See Roy v. Wainwright, 151 So.2d 825 (Fla. 1963). The rule, since its inception, has provided that "[a]n appeal may be taken ... as from a final judgment on application for writ of habeas corpus." Since either the defendant or the state can appeal an adverse decision from a judgment on a petition for habeas corpus, I have no difficulty concluding that the state may also appeal an adverse decision from a judgment on a 3.850 motion. There is no justification, however, for calling a 3.850 motion a civil proceeding when it was created as part of our criminal rules and all criminal due process rights apply thereto.
In addition, I must strongly disagree with the Court's imposition of the death sentence in this cause. To my knowledge, this is the first time this Court has actually imposed a death sentence. Under Brown v. Wainwright, 392 So.2d 1327 (Fla. 1981), our sole responsibility is to review the trial court's imposition of the death sentence. In this case, the trial judge, believing he was properly applying the standards enunciated by the United States Supreme Court in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), vacated the death sentence. This Court can properly reverse the trial court's orders with directions as to the applicable Enmund standards, and remand for further proceedings in accordance with those directions, but I conclude that we have no authority to impose a death sentence after it has been vacated by the trial judge and replaced with a life sentence. Further, under the circumstances of this case, I find that Enmund mandates the imposition of a life sentence and, therefore, I would affirm the trial judge.
McDONALD, Justice, dissenting.
The trial judge's order should be left undisturbed.
A review of the record supports the trial judge's findings that, in view of proscriptions enunciated in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), White's death sentence was unlawfully entered and affirmed by this Court. White objected to the idea of killing the victims, did not take part in the killing, and refused to assist in disposing of the weapons. His role in guarding the door was to further a robbery, not a homicide. He did not kill, attempt to kill, or intend to kill. The record does not disclose that he contemplated that lethal force would be used, although he did know that all participants were armed. His failure to dissuade others from killing does not rise to a participation in the killing. Although I voted to affirm appellee's death sentence on direct appeal, I would have voted for life imprisonment if the Enmund decision had been released at that time. Indeed, such a result is mandated by Enmund. Also, this is a jury override case. A unanimous jury recommended life imprisonment at the penalty phase of trial, presumably after taking into account the factors later explained in Enmund. We failed to rule that this was a rational basis for the jury's recommendation.
Further, I seriously question the right of the state to appeal the order under review. The majority finds this appeal permitted by Rule 3.850 "as from a final judgment on application for writ of habeas corpus." The relief granted here was to correct an illegal sentence under the rule announced in Enmund. I cannot interpret the reduction in sentence from death to life imprisonment to constitute "discharging a prisoner on habeas corpus" so as to permit an appeal by the state pursuant to Rule 9.140(c)(1)(F). Without a statute or rule *1382 permitting the state's appeal the state has no right to review the trial court's orders.
I would affirm the trial court's orders on post-conviction relief.
NOTES
[1] Appellee's argument on jurisdiction is far reaching in its implications. Essentially, appellee argues that in a post-conviction proceeding a trial court decision that a sentence is constitutionally impermissible is not subject to review even though the state supreme court has previously held to the contrary and the United States Supreme Court has denied certiorari review. Appellee would have us establish trial courts as the supreme authority on constitutional law.
[2] We will not belabor the point with string cites and a discussion of the various cases analyzing the nature of post-conviction remedies. Interested readers are referred to 28 Fla.Jur.2d Habeas Corpus § 127 (1981) and the cases cited therein.