No. 87–5362 (A–172). WHITE *v.* DUGGER, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS. C. A. 11th Cir. Application for stay of execution of sentence of death, presented to JUSTICE SCALIA, and by him referred to the Court, denied. Certiorari denied. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

The State of Florida will execute Beauford White tomorrow morning without so much as a determination by its own courts that his death sentence is currently legal. I adhere to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976) (dissenting opinion). But even were I not of that view, I would dissent from this Court's tacit approval of a death sentence whose factual predicate the executing State has not reviewed for consistency with intervening Supreme Court precedent. I would vote to stay White's execution, grant his petition for writ of certiorari, and reverse the judgments below denying habeas relief.

I

As summarized by the Florida Supreme Court, the relevant facts of this case are as follows: White and two companions entered a home under a subterfuge to rob its occupants. All three were armed and wore masks covering their faces from the nose down. After blindfolding and binding the sole occupant, the three robbers ransacked the house in search of valuables. Within an hour, seven acquaintances of the occupant appeared at the house. The three robbers bound the newcomers. At some point, the mask of one of White's companions fell off, exposing his face to the victims. Consequently, the three discussed the need to kill the victims. White voiced his opposition, but to no avail; his companions overrode him. White's two companions separated the victims into two rooms and systematically shot all eight in the back of the head, killing six. White remained in the house throughout, but did not participate in the shootings. The three co-felons then returned to White's motel room to divide their loot. A fourth participant, a wheelman who never entered the home, testified that he and White were both

duped into what he later discovered was a planned contract murder of one or two of the victims. He also testified that White was visibly shaken afterwards and refused to help dispose of the weapons.

A Florida jury convicted White of six counts of first-degree murder, two counts of attempted first-degree murder, and four counts of robbery, and unanimously recommended a life sentence. The trial judge, disregarding the jury's unanimous recommendation, imposed a death sentence. After this Court's decision in *Enmund* v. *Florida*, 458 U. S. 782 (1982), the Florida courts entertained a petition for postconviction relief to determine whether White's conduct exhibited the requisite intent to sustain a death sentence under that intervening case. The Florida Supreme Court reversed a lower court finding that *Enmund* was not satisfied. The court held that White had the requisite intent (within the meaning of *Enmund*) because, "whatever [White] might have originally intended or contemplated about lethal force being used in the robbery, it can hardly be said that he did not realize that lethal force was going to be used in carrying out the robbery." *State* v. *White*, 470 So. 2d 1377, 1380 (Fla. 1985).

Since then, White has twice sought postconviction relief from the Florida courts. He has argued, among other things, that he is entitled to a new determination as to whether his conduct was sufficiently culpable to satisfy the new culpability standard that this Court articulated in *Tison* v. *Arizona*, 481 U. S. 137 (1987). On each occasion, the state courts barred his application as untimely. White then filed a habeas petition in the United States District Court for the Southern District of Florida. The District Court denied relief, and the Court of Appeals for the Eleventh Circuit affirmed. 828 F. 2d 10 (1987). This evening, less than 11 hours before his death, White filed the instant petition for a writ of certiorari and application for a stay of execution.

## II

While the Florida Supreme Court purported to have found White's conduct sufficiently culpable to satisfy the *Enmund* test, it has to date never reconsidered that determination in light of this Court's rereading of *Enmund* in *Tison*. After briefly summarizing how *Tison* modified the *Enmund* inquiry, I will explain why, in my view, the modified analysis demands that we vacate White's death sentence, just as we did in *Tison*, until such time as the Florida courts have established the factual predicate that a majority of this

Court has deemed a constitutional prerequisite to the imposition of a death penalty.

In *Enmund, supra,* at 798, this Court declared that a State may not constitutionally execute a defendant who "did not kill or attempt to kill" and who had no "intention of participating in or facilitating a murder." This Term a majority of this Court departed from that holding when it held in *Tison* that a death penalty could constitutionally be imposed for felony murder. The *Tison* Court assumed for the sake of argument that the Tison brothers "did not 'intend to kill'" in the traditional sense: "Traditionally, 'one intends certain consequences when he desires that his acts cause those consequences or knows that those consequences are substantially certain to result from his acts.'" 481 U. S., at 150. (quoting W. LaFave & A. Scott, Criminal Law § 28, p. 196 (1972)). Accordingly the Court rejected the creative attempt of the Arizona Supreme Court (and others) to expand the traditional definition of intent to encompass foreseeable consequences. But the Court held that, *Enmund* notwithstanding, a defendant who did not intend to kill (in that traditional sense) could constitutionally be sentenced to death for "major participation in [a] felony" coupled with "reckless indifference to human life." 481 U. S., at 158 (footnote omitted).

The correctness of the *Tison* overlay on *Enmund* is not at issue here. More relevant to the issue of the proper disposition of this case, is the *Tison* Court's disposition of the case before it. Having assumed that the Tison brothers lacked traditional intent, the Court vacated the sentence and remanded for a determination whether the Tison brothers' participation amounted to "reckless indifference." 481 U. S., at 158. In so doing, it minced no words about its view of the matter: "[T]he record," the Court observed, "would support a finding of the culpable mental state of reckless indifference to human life." *Id.,* at 151; see also *ibid.* ("These facts . . . would clearly support a finding that . . . both [defendants] subjectively appreciated that their acts were likely to result in the taking of innocent life"). Despite its clear leaning, the Court declined to enter the requisite *Tison* findings itself. Nor did it attempt to divine from what the Arizona courts *had* said in applying *Enmund,* what they *would* say in applying the new *Tison* overlay.

The Court's citation to *Cabana* v. *Bullock,* 474 U. S. 376 (1986), suggests that it considered such psychoanalysis improper. Under *Cabana,* "it is [the State] . . . not the federal . . . court, which should first provide [the defendant] with that which he has not yet

had and to which he is constitutionally entitled—a reliable determination as to whether he is subject to the death penalty," under whatever standards this Court may most recently have articulated. *Id.*, at 391. As there explained, the right arises not only because justice demands that the same judicial system that sentences a defendant to death find the requisite factual predicate for the sentence, but also because "[c]onsiderations of federalism and comity counsel respect for the ability of state courts to carry out their role as the primary protectors of the rights of criminal defendants . . . ." *Ibid.* (citation omitted).

I see no reason not to extend to White the same constitutional entitlement that we extended to the Tison brothers. Nor does the Florida Supreme Court in this case deserve any less respect than we afforded the Arizona Supreme Court in *Tison.* The state court here no more addressed the *Tison* overlay than did the *Tison* state court. Obviously, it could not have, since at the time of the Florida Supreme Court's last decision on the merits, *Tison* had not yet been decided. See 474 U. S., at 389 ("[T]he [State] Supreme Court obviously was not addressing the specific requirements set forth in *Enmund,* for that case had not yet been decided").

The only conceivable difference then between this case and *Tison* is that here, unlike in *Tison,* this Court assumes (as did the courts below) that the State Supreme Court's pre-*Tison* analysis encompassed some finding that the petitioner *intended,* in (what *Tison* deems) the traditional sense, that his actions would kill the victims. I am willing to make no such assumption, however, when a man's life is at stake. To be sure, the State Supreme Court observed that there came a point (once White's two accomplices overruled his objections to murder) at which "it can hardly be said that he did not realize that lethal force was going to be used in carrying out the robbery." *State* v. *White,* 470 So. 2d, at 1380. It then reiterated its finding that White "stood by while the victims were shot one by one." *Ibid.* (citation and internal quotes omitted). But inaction in the face of an expected murder is a far cry from the traditional definition of intent to kill. The Florida Supreme Court never found that White did anything (after coming to the rude "realiz[ation]" that his co-felons were about to commit murder) to further the murders. Nor did it find that he could have done anything to prevent the murders, short of killing his accomplices or otherwise risking his own life. There is not even any state finding that White had

either the time or the freedom to dissociate himself from the sordid affair in the brief interval between the realization and the murders.

Since the death sentence cannot stand without the requisite findings by a state court and the state court's findings are inadequate, I would reverse the judgment of the Court of Appeals. "[T]he District Court should be directed to issue the writ of habeas corpus vacating [White's] death sentence but leaving to the State of [Florida] the choice of either imposing a sentence of life imprisonment or, within a reasonable time, obtaining a determination from its own courts of the factual question" that it never clearly decided— whether White either intended to kill the victims in the traditional sense, or acted with reckless indifference to human life. *Cabana, supra,* at 392.

### III

This Court's refusal to stay White's execution is inexcusable for yet another reason. It permits the State to put him to death based, in part, on two aggravating circumstances whose application to this case is constitutionally suspect, at best. The trial judge found that the murders committed by White's companions were "especially heinous, atrocious or cruel" and "were committed in an effort to avoid arrest by eliminating witnesses to the crime." *White* v. *State,* 403 So. 2d 331, 338 (Fla. 1981). In *Tison* we left open the issue whether a court may constitutionally attribute to a defendant as an aggravating factor the manner in which other individuals carried out the killings. See 481 U. S., at 146, n. 2; *id.,* at 160, n. 3 (BRENNAN, J., dissenting). Nor has this Court ever addressed the related question whether the purposes for which other individuals committed a crime can be constitutionally attributed to a defendant as an aggravating circumstance. Such vicarious attribution "would seem to violate the core Eighth Amendment requirement that capital punishment be based upon an 'individualized consideration' of the defendant's culpability," *ibid.* (quoting *Lockett* v. *Ohio,* 438 U. S. 586, 605 (1978)).