# Supreme Court of Florida

_____

No. SC20-257
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**MICHAEL JAMES JACKSON,**
Respondent.

November 25, 2020

PER CURIAM.

Petitioner, the State of Florida, has invoked this Court's authority to issue all writs necessary to the complete exercise of its jurisdiction. *See* art. V, § 3(b)(7), Fla. Const. Citing this Court's ultimate jurisdiction under article V, section 3(b)(1) of the Florida Constitution, the State petitions this Court for an extraordinary writ that would direct the circuit court to dismiss a resentencing proceeding and reinstate two previously vacated death sentences for Respondent, Michael James Jackson. Alternatively, the State petitions this Court for a writ of prohibition, *see* art. V, § 3(b)(7), Fla. Const., that would bar the circuit court from conducting the resentencing.

The issue undergirding the State's petition is whether a death sentence that was vacated by the postconviction court can be "reinstated" if the State never appealed the final order granting relief, the resentencing has not yet taken place, and this Court has since receded from the decisional law on which the sentence was vacated.  *See Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020).  Because the State's arguments that we should answer that question in the affirmative are flawed, we deny the State's all writs petition and alternative petition for writ of prohibition.

## I. BACKGROUND

### *Hurst* and *Poole*

In *Hurst*, this Court on remand from *Hurst v. Florida*, 577 U.S. 92 (2016), held

> that before the trial judge may consider imposing a sentence of death, the jury in a capital case must unanimously and expressly find all the aggravating factors that were proven beyond a reasonable doubt, unanimously find that the aggravating factors are sufficient to impose death, unanimously find that the aggravating factors outweigh the mitigating circumstances, and unanimously recommend a sentence of death.

*Hurst*, 202 So. 3d at 57.  After determining that the defendant's sentencing proceeding involved constitutional error that "was not harmless beyond a reasonable doubt," this Court in *Hurst* "remand[ed] for a new penalty phase."  *Id.* at 45.  Subsequent to *Hurst*, this Court in *Mosley v. State*, 209 So. 3d 1248, 1283

(Fla. 2016), held "that *Hurst* should be applied retroactively to" defendants whose sentences became final after *Ring v. Arizona*, 536 U.S. 584 (2002).

In *Poole*, the postconviction court, based on *Hurst*, set aside the defendant's death sentence. *Poole*, 297 So. 3d at 491. The State timely appealed the postconviction court's order, arguing that Poole, who was convicted not just of first-degree murder but also of attempted first-degree murder, armed burglary, sexual battery, and armed robbery, "suffered no constitutional deprivation in his sentencing proceeding," and requesting that this Court "reexamine and partially recede from *Hurst*." *Id.* Recognizing that *Hurst* had misinterpreted *Hurst v. Florida*, this Court in *Poole* "recede[d] from *Hurst v. State* except to the extent that it held that a jury must unanimously find the existence of a statutory aggravating circumstance beyond a reasonable doubt." *Id.* And in reversing the portion of the order that set aside the death sentence, we explained that the jury's unanimous finding that Poole committed other violent felonies during the course of the first-degree murder "satisfied the requirement that a jury unanimously find a statutory aggravating circumstance beyond a reasonable doubt." *Id.* at 508.[1]

---

1. Our decision in *Poole* is consistent with *McKinney v. Arizona*, 140 S. Ct. 702, 707 (2020), in which the United States Supreme Court has since held that, although "a jury must find the aggravating circumstance that makes the defendant death eligible . . . , a jury (as opposed to a judge) is not constitutionally required to weigh the aggravating and mitigating circumstances or to make the ultimate sentencing decision within the relevant sentencing range." *McKinney* also held

**This Case**

Jackson was convicted by a jury of the robberies, kidnappings, and murders of James and Carol Sumner. *Jackson v. State*, 18 So. 3d 1016, 1020 (Fla. 2009). "[T]he jury recommended death sentences for the murders of both victims by votes of eight to four." *Id.* at 1024. "The trial court found eight aggravating circumstances," including that "Jackson had been previously convicted of another capital felony because the murders occurred contemporaneously" and that the murders "were committed while Jackson was engaged in the felony of kidnapping." *Id.* The trial court "imposed a sentence of death for each of the murders." *Id.* On direct appeal, we affirmed Jackson's convictions and sentences. *Id.* at 1036. In 2013, we affirmed the denial of Jackson's initial postconviction motion filed under Florida Rule of Criminal Procedure 3.851, and we denied Jackson's habeas petition. *Jackson v. State*, 127 So. 3d 447, 477 (Fla. 2013).

On February 27, 2017, Jackson filed a successive postconviction motion seeking *Hurst* relief. The postconviction court granted Jackson a new penalty phase, and the State did not appeal the order granting relief. Jackson's new penalty phase was scheduled to begin on February 24, 2020.

---

that "*Ring* and *Hurst* [*v. Florida*] do not apply retroactively on collateral review." *Id.* at 708.

- 4 -

On February 4, 2020, the State sought to apply the holding in *Poole* to Jackson's case by filing a motion below requesting that the circuit court dismiss the resentencing proceeding "and maintain [Jackson's] sentence[s] of death," given, among other things, Jackson's contemporaneous convictions for other qualifying felonies. The circuit court denied the State's motion, reasoning that it "lack[ed] jurisdiction to reconsider" the final order that vacated Jackson's death sentences. The circuit court in relevant part explained:

> The time in which to appeal the June 9, 2017 Order has passed and, as such, it is a final order that this Court cannot rescind or dismiss. *See Taylor v State*, 140 So. 3d 526, 529 (Fla. 2014); *Simmons v. State*, 274 So. 3d 468, 470 (Fla. 1st DCA 2019) ("Because the order granting resentencing became final when neither party moved for rehearing or appealed the order, the trial court had no authority to enter a second order rescinding the original order.").

On February 20, 2020, the State filed with this Court the Emergency All Writs Petition and Petition for Writ of Prohibition as well as a motion to stay the resentencing proceedings. We granted the motion to stay and requested that Jackson respond to the State's petition. Jackson timely filed a response. Oral argument was held on June 2, 2020.

## II. ALL WRITS PETITION

In its all writs petition, the State asks this Court to direct the circuit court to reinstate Jackson's death sentences. In the alternative, the State asks this Court to direct the circuit court to consider the State's motion below and to disregard

- 5 -

*Simmons*, a decision on which the circuit court in part relied and from which the First District has since receded en banc in *Rogers v. State*, 296 So. 3d 500 (Fla. 1st DCA 2020). Both requests are grounded in the notion that the circuit court has the inherent authority to reconsider the final order that vacated Jackson's sentences. But the State fails to establish that any such authority exists. Therefore, even assuming the all writs provision could be used to grant the type of relief requested, we deny the State's petition.

In the end, the State provides no relevant authority to support its assertion that a final order that disposes of a rule 3.851 motion by granting a new penalty phase is in substance a nonfinal, interlocutory order. Although a "trial court retains inherent authority to reconsider and, if deemed appropriate, alter or retract any of its nonfinal rulings prior to entry of the final judgment or order terminating an action," *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 (Fla. 1998), here the State erroneously assumes that a postconviction proceeding is a step in the criminal prosecution and that a resentencing proceeding is a continuation of a postconviction proceeding. Our caselaw says otherwise.

We begin our analysis by briefly addressing our jurisdiction to entertain the all writs petition. We then examine the relevant rules of procedure and decisions from this Court, including *Taylor* and *State v. Owen*, 696 So. 2d 715 (Fla. 1997) (*Owen II*). We next explain why neither *Simmons* nor *Rogers* is relevant. Lastly,

we address *McCoy v. State*, No. SC20-427 (Fla. notice of appeal filed Mar. 23, 2020), a pending case in which the circuit court under similar circumstances reinstated the defendant's death sentence in the wake of *Poole*, and we explain why the circuit court there erred.

**Jurisdiction**

This Court "[m]ay issue . . . all writs necessary to the complete exercise of its jurisdiction." Art. V, § 3(b)(7), Fla. Const. "[T]he all writs provision does not constitute a separate source of original or appellate jurisdiction" but instead "operates as an aid to the Court in exercising its 'ultimate jurisdiction,' conferred elsewhere in the constitution." *Williams v. State*, 913 So. 2d 541, 543 (Fla. 2005). The use of the all writs provision "is restricted to preserving jurisdiction that has already been invoked or protecting jurisdiction that likely will be invoked in the future." *Roberts v. Brown*, 43 So. 3d 673, 677 (Fla. 2010).

The State cites as the independent basis for jurisdiction article V, section 3(b)(1), under which we have exclusive jurisdiction to "hear appeals from final judgments of trial courts imposing the death penalty." Jackson counters that "this Court's ultimate jurisdiction over death penalty cases is not in jeopardy."

We conclude that an independent jurisdictional basis exists. Indeed, we are preserving our jurisdiction under article V, section 3(b)(1) to decide an issue—one that is "unique to capital cases or to the death sentence itself," *State v. Preston*, 376

- 7 -

So. 2d 3, 4 (Fla. 1979)—that is already before this Court on direct appeal and that has resulted in at least one vacated death sentence being reinstated by a circuit court in the absence of a resentencing proceeding. *See State v. McCoy*, No. 2009-CF-257 (Fla. 1st Cir. Ct. Feb. 10, 2020), *notice of appeal filed*, No. SC20-427 (Fla. Mar. 23, 2020). Although we have jurisdiction to entertain the State's all writs petition, the relevant authorities require that we deny the petition.

**Florida Rule of Criminal Procedure 3.851**

Rule 3.851 governs postconviction motions by defendants, like Jackson, whose death sentences have been affirmed on direct appeal. Here, Jackson sought *Hurst* relief in a rule 3.851 proceeding, and the postconviction court entered an order granting that relief. The State's attempt to effectively have the circuit court now reconsider that order years later finds no support in the rule. Indeed, the plain language of the rule establishes that the State's attempt is time-barred.

As an initial matter, under rule 3.851(f)(5)(F), a postconviction court's order that "resolve[s] all the claims raised in the motion" is expressly referred to as "the final order for purposes of appeal," not as a nonfinal order that is nevertheless appealable. The order at issue here is a "final order" under rule 3.851.

Rule 3.851 then establishes time limits within which the State may challenge a final order, either by moving for rehearing, filing a notice of appeal, or both. Rule 3.851(f)(7) requires that motions for rehearing "be filed within 15 days of the

rendition of the trial court's order."  And rule 3.851(f)(8) requires that a notice of appeal be filed "within 30 days of the rendition of the order to be reviewed."  Rule 3.851(f)(8) also contemplates belated appeals, but only by a death-sentenced defendant.  The time limits applicable to the State expired long ago.

The State attempts to sidestep being procedurally barred by claiming to challenge not "the *entry* of [the 2017] order" but rather "its continuing viability."  The State reasons that the 2017 order may be final "for purposes of appeal" but will not be "final as to judgment" until Jackson is resentenced.  But the State's underlying reasoning cannot be squared with *Taylor*, *Owen II*, or Florida Rule of Appellate Procedure 9.142, titled "Procedures for Review in Death Penalty Cases."

### *Taylor*

In *Taylor*, the defendant filed a postconviction motion under Florida Rule of Criminal Procedure 3.850—which is similar in many respects to rule 3.851—and the trial court "entered an order partially granting relief on Taylor's sentencing claim and denying relief as to Taylor's other postconviction claims."  *Taylor*, 140 So. 3d at 527.  Taylor moved for rehearing as to the denied claims but was resentenced before the trial court ruled on the rehearing motion.  *Id.* at 527-28.  Taylor appealed the new sentence, and the Fifth District affirmed.  *Id.* at 528.  The trial court later addressed Taylor's rehearing motion "and denied relief."  *Id.*  Taylor then appealed that denial of relief, and "[t]he Fifth District

dismissed the appeal for lack of jurisdiction," concluding "that a trial court's order partially denying and partially granting postconviction relief by ordering resentencing was not a final appealable order because the resentencing required further judicial labor in the underlying case." *Id.* The Fifth District thus concluded that "Taylor should have raised any issues related to the disposition of his other postconviction claims on appeal after resentencing." *Id.* And the Fifth District certified conflict with decisions of the Second District (*Cooper v. State*, 667 So. 2d 932 (Fla. 2d DCA 1996)) and the First District (*Slocum v. State*, 95 So. 3d 911 (Fla. 1st DCA 2012)). *Taylor*, 140 So. 3d at 528.

On discretionary review, this Court agreed with *Cooper* and *Slocum* and held "that an order disposing of a postconviction motion which partially denies and partially grants relief is a final order for purposes of appeal, even if the relief granted requires subsequent action in the underlying case, such as resentencing." *Id.* Among other things, we explained that our holding was consistent with recently added language in rule 3.850 that "[t]he order issued after the evidentiary hearing shall resolve all the claims raised in the motion and shall be considered the final order for purposes of appeal." *Id.* at 529 (alteration in original) (quoting *In re Amendments to Fla. Rules of Criminal Procedure & Fla. Rules of Appellate Procedure*, 132 So. 3d 734, 750 (Fla. 2013)). And in rejecting "the State's contention that permitting a postconviction appeal to proceed

- 10 -

separately from a resentencing appeal will encourage piecemeal litigation," we reasoned that "postconviction proceedings and resentencing proceedings are separate, legally discrete proceedings" and that "resentencing is an entirely new, independent proceeding." *Id.*

Like the order in *Taylor*, the order at issue here is similarly a final order. The order resolved Jackson's claims and "marks the end of the judicial labor which is to be expended on the motion." *Id.* (quoting *Cooper*, 667 So. 2d at 933); *see also M.M. v. Fla. Dep't of Children & Families*, 189 So. 3d 134, 137 (Fla. 2016) ("An appeal from a final order is appropriate when judicial labor has ended."). That is true even though "the relief granted requires . . . resentencing." *Taylor*, 140 So. 3d at 528. And that is true even though *Taylor* involved rule 3.850 rather than rule 3.851. Among other things, rule 3.851 contains precisely the same language as rule 3.850 regarding the order resolving all claims being "the final order for purposes of appeal." *Compare* Fla. R. Crim. P. 3.851(f)(5)(F), *with* Fla. R. Crim. P. 3.850(f)(8)(C).

The State argues that the language in *Taylor* regarding postconviction proceedings and resentencing proceedings was dicta. The State also argues that final "for purposes of appeal" is not synonymous with final "for the purposes of jurisdiction." On that latter point, the State reasons that the underlying "cause" in

Jackson's case is the criminal prosecution and that when a resentencing is ordered, that "cause" remains and is ongoing.  We disagree with the State's reasoning.

As an initial matter, the language in *Taylor* explaining that postconviction proceedings and resentencing proceedings are "legally discrete" and "independent" is not dicta.  That explanation formed the basis for *Taylor* rejecting the State's "piecemeal litigation" argument.  Moreover, *Taylor*'s recognition of the legal distinction between those two proceedings logically flows from a related concept this Court has recognized and that the State overlooks—i.e., that postconviction proceedings are technically civil in nature and are *not* a step in the underlying prosecution.  *See Darling v. State*, 45 So. 3d 444, 450 (Fla. 2010) ("Consequently, *postconviction relief proceedings, while technically classified as civil actions, are actually quasi-criminal in nature* because they are heard and disposed of by courts with criminal jurisdiction." (alteration in original) (quoting *State ex rel. Butterworth v. Kenny*, 714 So. 2d 404, 409-10 (Fla. 1998), *receded from on other grounds by Darling*, 45 So. 3d 444)); *State v. White*, 470 So. 2d 1377, 1378 (Fla. 1985) (recognizing that "post-conviction collateral remedies are not steps in a criminal prosecution but are in the nature of independent collateral civil actions"); *State v. Weeks*, 166 So. 2d 892, 898 (Fla. 1964) (clarifying that the postconviction motion at issue was not truly "a collateral civil action" but was more so "actually

hybrid in character," but reiterating that the motion "does not constitute a step in a criminal prosecution").

If a postconviction proceeding is not a step in a criminal prosecution, and if a resentencing proceeding is legally distinct from a postconviction proceeding, then a postconviction court's final order granting a resentencing cannot be analogized to a nonfinal, interlocutory order. Rather, that final order, absent rehearing or appeal, brings an end to the postconviction proceeding and thus "should be treated as a final judgment." *Clearwater Fed. Sav. & Loan Ass'n v. Sampson*, 336 So. 2d 78, 79 (Fla. 1976). This conclusion is reinforced by Florida Rule of Appellate Procedure 9.142, which the State also overlooks.

**Florida Rule of Appellate Procedure 9.142**

Rule 9.142 undermines the State's "nonfinal" and "cause" arguments. Rule 9.142(c) specifically addresses "Petitions Seeking Review of Nonfinal Orders in Death Penalty Postconviction Proceedings" and provides in relevant part:

> *During the pendency of a review of a nonfinal order*, unless a stay is granted by the supreme court, the lower tribunal may proceed with all matters, except that *the lower tribunal may not render a final order disposing of the cause* pending review of the nonfinal order.

Fla. R. App. P. 9.142(c)(9)(B) (emphasis added).

If a postconviction court's "final order dispos[es] of the cause," *id.*, then "the cause" in a postconviction proceeding is obviously not the same as the "cause" in the underlying prosecution. Indeed, "the cause" in a rule 3.851 proceeding is

- 13 -

comprised of the claims asserted in the motion. And an order disposing of "all the claims" is both "the final order for purposes of appeal," Fla. R. Crim. P. 3.851(f)(5)(F), and the "final order disposing of the cause," Fla. R. App. P. 9.142(c)(9)(B), "even if the relief granted requires . . . resentencing," *Taylor*, 140 So. 3d at 528. The order at issue here was "cause" dispositive.

### *Owen II*

*Owen II* cements our decision. *Owen II* stands for the analogous proposition that intervening decisional law cannot be used to reinstate a vacated conviction, even when the change in decisional law invalidates the very ground on which the conviction was vacated and occurs before the new trial commences.

Owen "was convicted of first-degree murder and sentenced to death." 696 So. 2d at 717. In his original direct appeal, *see Owen v. State*, 560 So. 2d 207 (Fla. 1990) (*Owen I*), this Court reversed the conviction and remanded for retrial on the ground that Owen's statements to police had been obtained in violation of *Miranda*[2] and were thus inadmissible. *Owen II*, 696 So. 2d at 717. Before Owen's retrial, the Supreme Court issued *Davis v. United States*, 512 U.S. 452 (1994), which "undercut the premise upon which" this Court had vacated Owen's conviction. *Owen II*, 696 So. 2d at 719. In *Owen II*, we then addressed whether

---

2. *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 14 -

the trial court at Owen's retrial could reconsider the admissibility of the confession in the wake of *Davis*. *Id.* We concluded that *Davis* was the type of intervening decision that warranted changing the law of the case such that the admissibility of Owen's confession at his new trial would "be subject to the *Davis* rationale." *Id.* at 720. But we rejected the State's request that we outright "reinstate Owen's convictions." *Id.* We explained:

> [T]he State would have this Court reinstate Owen's convictions on the ground that a retrial is unnecessary in light of our decision. We are unwilling to go that far. Our prior decision which reversed Owen's convictions and remanded for a new trial is a final decision that is no longer subject to rehearing. With respect to this issue, Owen stands in the same position as any other defendant who has been charged with murder but who has not yet been tried. Just as it would be in the case of any other defendant, the admissibility of Owen's confession in his new trial will be subject to the *Davis* rationale that we adopt in this opinion. However, Owen's prior convictions cannot be retroactively reinstated.

*Id.*

The State attempts to do here with respect to Jackson's vacated sentences that which the State unsuccessfully attempted to do in *Owen II* with respect to Owen's vacated convictions. That is, the State attempts to have Jackson's sentences "retroactively reinstated," *id.*, based on decisional law (i.e., *Poole*) that has completely "undercut the premise upon which," *id.* at 719, Jackson's sentences were vacated. But the order vacating Jackson's sentences was as much final at the time *Poole* was decided as *Owen I* was final at the time *Davis* was decided. Owen

- 15 -

stood "in the same position as any other defendant who has been charged with murder but who has not yet been tried," *id.* at 720, and Jackson analogously stands in the same position as any other defendant who has been convicted of first-degree murder but who has not yet been sentenced, *cf. Teffeteller v. State*, 495 So. 2d 744, 745 (Fla. 1986) ("A prior sentence, vacated on appeal, is a nullity."). As in *Owen II*, finality prevails here. Jackson's sentences cannot be retroactively reinstated.

**The First District's Decisions in *Simmons* and *Rogers***

The State devotes a significant portion of its all writs petition to challenging *Simmons*, a case involving Florida Rule of Criminal Procedure 3.800(a) rather than rule 3.850 and in which the First District in part relied on this Court's decision in *Taylor* (a rule 3.850 case). And the State notes that *Rogers*, also a rule 3.800(a) case, has since receded from *Simmons*. But *Rogers* does not guide our analysis. Among other things, as *Rogers* itself recognized, rule 3.800(a) differs considerably from rule 3.850.

In *Simmons*, the juvenile offender moved for relief under rule 3.800(a), the State conceded error, and resentencing was ordered. *Simmons*, 274 So. 3d at 469-70. Before resentencing, certain intervening decisional law undermined the premise on which Simmons had been granted a resentencing, and the trial court rescinded the original order. *Id.* at 470. On appeal, the First District quashed and remanded, reasoning that the original order was final and appealable and that the

trial court was without jurisdiction to reconsider it. *Id.* at 472. The First District relied on *Jordan v. State*, 81 So. 3d 595 (Fla. 1st DCA 2012) (a rule 3.800(a) case), and *Slocum* (a rule 3.850 case that this Court approved in *Taylor*). *See Simmons*, 274 So. 3d at 470-71. The First District also rejected the State's reliance on certain language in Florida Rule of Criminal Procedure 3.192. *Id.* at 471-72.

*Rogers* has since receded from *Simmons*, largely on the ground that "*Simmons* . . . failed to appreciate the differences between rules 3.800(a) and 3.850." *Rogers*, 296 So. 3d at 506-07. More specifically, *Rogers* "recede[d] from *Simmons* for three reasons," holding as follows:

> First, an order granting a rule 3.800(a) motion is not a final order. Second, the State cannot appeal an order granting a rule 3.800(a) motion until resentencing has occurred. And third, the trial court has inherent authority to reconsider an order granting a rule 3.800(a) motion if resentencing has not occurred.

*Id.* at 504. On the second point, *Rogers* in relevant in part distinguished this court's decision in *Taylor* on multiple grounds, including that *Taylor* purportedly addressed only whether the portion of the order denying relief was appealable, not "the part of the order granting relief." *Id.* at 508.

We need not opine on *Rogers* except to say that we disagree with *Rogers*'s reading of *Taylor*. Nothing in *Taylor* suggests our holding only applied to that portion of the order denying relief. Indeed, the order was final for purposes of

appeal because it resolved all of Taylor's claims. *See Taylor*, 140 So. 3d at 529.

As explained above, the order at issue here was similarly a final order.

### *McCoy v. State*, No. SC20-427

As the State notes, the First Judicial Circuit Court applied the holding in

*Poole* by reinstating a vacated death sentence under circumstances similar to those

here. *See State v. McCoy*, No. 2009-CF-257 (Fla. 1st Cir. Ct. Feb. 10, 2020),

*notice of appeal filed*, No. SC20-427 (Fla. Mar. 23, 2020). We are not persuaded

by the circuit court's reasoning in that case. Indeed, the circuit court largely

adopted the same flawed reasoning advanced by the State here. The circuit court

thus erred in reinstating McCoy's vacated death sentence.

In its order reinstating McCoy's death sentence, the circuit court merely

referenced "the change in authority demonstrated by *Poole*." And in its order after

rehearing, the circuit court cited *Silvestrone v. Edell*, 721 So. 2d 1173 (Fla. 1998),

and *Savoie v. State*, 422 So. 2d 308 (Fla. 1982), in concluding that, because the

State had not appealed the postconviction court's order and "resentencing had not

commenced," the circuit court had "inherent authority to reconsider" the prior

order. The circuit court did not, however, address any relevant rules of procedure

or decisions from this Court. And our decisions in *Silvestrone* and *Savoie* simply

do not support reinstating a vacated death sentence. *See Silvestrone*, 721 So. 2d at

1174 (addressing "the two-year statute of limitations for legal malpractice, in a

- 18 -

litigation context"); *Savoie*, 422 So. 2d at 310 (involving an issue that "arose from a denial of a motion to suppress made during trial").

### III. PETITION FOR WRIT OF PROHIBITION

The State alternatively petitions this Court for a writ of prohibition that would bar the circuit court from conducting a resentencing. But the State's alternative petition fares no better than the State's all writs petition.

Under article V, section 3(b)(7) of the Florida Constitution, this Court "[m]ay issue writs of prohibition to courts." Art. V, § 3(b)(7), Fla. Const. The writ is one of "limited applicability." *Roberts*, 43 So. 3d at 677.

> Prohibition may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in excess of jurisdiction. It is preventive and not corrective in that it commands the one to whom it is directed not to do the thing which the supervisory court is informed the lower tribunal is about to do. *Its purpose is to prevent the doing of something, not to compel the undoing of something already done*.

*English v. McCrary*, 348 So. 2d 293, 296-97 (Fla. 1977) (emphasis added).

At bottom, the State's alternative petition is based on a bold assertion—i.e., that *Hurst* and anything stemming from *Hurst*, including the order granting Jackson a resentencing, is void—for which the State fails to provide any relevant decisional authority. The State pinpoint cites only *Town of Palm Beach v. Gradison*, 296 So. 2d 473, 477 (Fla. 1974), and *Sarasota Citizens for Responsible Gov't v. City of Sarasota*, 48 So. 3d 755, 762 (Fla. 2010), both of which involve the government in the sunshine law. Although we recognize in no uncertain terms

- 19 -

that *Hurst* badly misinterpreted *Hurst v. Florida*, we reject the State's attempt to equate *Hurst* with local ordinances and legislative acts.

In the end, there is no basis on which to grant the State's alternative petition. To the extent the State seeks to permanently halt the resentencing, that would leave Jackson without a sentence for the two murders. The circuit court is obviously not "without jurisdiction," *McCrary*, 348 So. 2d at 296, to conduct a resentencing. To the extent the State requests that the death sentences be reinstated, a writ of prohibition would be wholly improper, as it cannot be used "to compel the undoing of something already done." *Id.* at 297. The writ thus cannot be used to undo the final order at issue here.

## IV. CONCLUSION

Jackson's vacated death sentences cannot be retroactively reinstated. We thus deny the State's all writs petition. We also deny the State's alternative petition for writ of prohibition.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – All Writs

Ashley Moody, Attorney General, Stephen D. Ake, Senior Assistant Attorney General, William David Chappell and Michael Kennett, Assistant Attorneys General, Tallahassee, Florida,

    for Petitioner

Marie-Louise Samuels Parmer and Maria DeLiberato of Parmer DeLiberato, P.A., Tampa, Florida,

    for Respondent